**Edwin B. MISHKIN, as Trustee for the Liquidation of the Business of Parr Securities Corp., Plaintiff,**

v.

**PEAT, MARWICK, MITCHELL & CO., Defendant.**

**No. 86 Civ. 4301 (EW).**

United States District Court, S.D. New York.

April 23, 1987.

---

Davis, Markel & Edwards, New York City, for defendant.

Leonard P. Novello, Gen. Counsel, Peat, Marwick, Mitchell & Co., Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiff; Thomas J. Moloney, Mitchell A. Lowenthal, Martha F. Davis, of counsel.

EDWARD WEINFELD, District Judge.

This action was commenced by Edwin B. Mishkin, trustee for the liquidation of the business of Parr Securities Corp. ("Parr") on behalf of its creditors and also on behalf of customers of Parr and the Securities Investor Protection Corporation ("SIPC"). Parr was a registered broker-dealer until its bankruptcy. The Second Count of the complaint, which is brought on behalf of Parr's customers and SIPC, alleges that as a result of Peat, Marwick, Mitchell & Co.'s ("PMM") reckless conduct in its 1983 audit of Parr, PMM aided and abetted the President of Parr, Gregory F. Herbert, in his violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.

Defendant PMM moves to dismiss the Second Count of the plaintiff's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim of aiding and abetting. The Trustee's complaint alleges that PMM was Parr's independent auditor from Parr's incorporation in May 1981 until December 1984; that PMM's last audit and report covered Parr's financial statements for the fiscal year ending October 1983; and that PMM failed to conduct its audit for the period from November 1982 through October 1983 in a competent, professional manner, and, in fact, conducted it with indifference to the consequences of its acts. The Trustee further alleges that had PMM conducted "the most rudimentary elements of an adequate audit," it would have discovered that by October 1983 Parr was insolvent by millions of dollars; that

> The appearance of solvency and regularity created by Parr's published financial statements, certified by Peat Marwick, resulted in the continuation of Parr's operations and enabled Herbert to continue to engage in the fraudulent practices described above during the period following completion of the 1983 Audit and through December 1984.

and that by failing to discover such fraudulent practices:

> [P]arr's customers and the Securities Investor Protection Corporation (which has become subrogated to certain claims of such customers) have been damaged from fraudulent transactions involving the purchase and sale of securities during the period following completion of the 1983 Audit and through December 1984 in an amount which plaintiff believes will equal or exceed $6 million.

Essentially, the claim alleges that PMM is liable as an aider and abettor in Herbert's cover-up scheme, in which he hid Parr's loses by raising money through various fraudulent transactions, including the sale of fictitious securities. The damages plaintiff seeks to recover arise only from the fraudulent transactions which occurred "during the period following completion of the 1983 Audit through December 1984."

### Discussion

 Civil liability for aiding and abetting federal securities fraud under Rule 10b–5 requires proof (1) of a violation by a primary wrongdoer;[1] (2) knowledge of the violation by the person sought to be charged; and (3) that the person sought to be charged "substantially assisted" in the achievement of the primary violation.[2] "Moreover, the three requirements cannot be considered in isolation from one another."[3]

---

1. Defendant does not contest the existence of a primary violation on this motion.

2. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62 (2d Cir.1985).

3. *IIT, Internat'l Invest. Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980).

■ It is clear that, with regard to the "knowledge" element of the aiding and abetting test, where a defendant owes a duty to a victim of fraud, recklessness satisfies the scienter requirement.[4] However, our Court of Appeals has reserved decision on the issue of whether recklessness will be sufficient to satisfy "knowledge" where there is no duty to the victims of the fraud.[5]

This is not to say that the district courts have been left without guidance. Our Court of Appeals has held that where no fiduciary duty is owed to the defrauded party by the defendant, "the 'scienter' requirement scales upward—the assistance rendered must be knowing and substantial."[6] Further, that the scienter, "must, in fact, approximate an actual intent to aid in the fraud being perpetrated;"[7] in other words, where there is no fiduciary duty, "... an alleged aider-abettor should be found liable only if scienter of the high 'conscious intent' variety can be proved."[8]

In light of this guidance, a number of district courts in our circuit have held that recklessness is sufficient to establish scienter where the plaintiffs are third parties whose reliance upon the accountant's audit or opinion letter is reasonably foreseeable.[9]

While courts do not generally view the accountant-client relationship, and hence the accountant-third-party customer relationship, as a fiduciary one,[10] some support for the holdings of those cases applying a recklessness standard to foreseeable reliance can be found in *IIT, International Investment Trust v. Cornfeld.*[11] In *Cornfeld*, Judge Friendly wrote that "Accountants do have a duty to take reasonable steps to correct misstatements they have discovered in previous financial statements on which they know the public is relying."[12] One charged with the specific responsibility of a competent professional audit cannot relieve himself of liability by shutting his eyes to what was plainly to be seen.[13]

■ While the reliance alleged in this case is somewhat more generalized than that alleged in other cases confronting the issue of applying a recklessness standard to an aiding and abetting claim, the existence and nature of the regulatory system under which brokerage firms operate warrants the application of a recklessness standard in this case.

To begin with, among the fraudulent securities transactions contained in plaintiff's

---

4. *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

5. *See, e.g., Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 575 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Oleck v. Fischer*, 623 F.2d 791, 795 (2d Cir.1980); *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 484 (2d Cir.1979), *cert. denied*, 434 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

6. *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983) (citation omitted); *see also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 575 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478 (2d Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *Woodward v. Metro Bank*, 522 F.2d 84 (5th Cir.1975).

7. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 121 (2d Cir.1982); *see also Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d

478, 485 (2d Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

8. *IIT, Internat'l Invest. Trust v. Cornfeld*, 619 F.2d 909, 925 (2d Cir.1980) (quoting *Woodward v. Metro Bank*, 522 F.2d 84, 97 (5th Cir.1975)); *see also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 575 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982).

9. *See, e.g., Morgan v. Prudential Group, Inc.*, 527 F.Supp. 957, 961 (S.D.N.Y.1981), *aff'd without opinion*, 729 F.2d 1443 (2d Cir.1983); *In re Investors Funding Corp.*, 523 F.Supp. 533 (S.D.N.Y. 1980); *Oleck v. Fischer*, 1979 Fed.Sec.L.Rep. para. 96, 898 (S.D.N.Y.1979), *aff'd on other grounds*, 623 F.2d 791 (2d Cir.1980).

10. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F.Supp. 1314 (S.D.N.Y.1982).

11. 619 F.2d 909 (2d Cir.1980).

12. *Id.* at 927.

13. *Cf. United States v. Benjamin*, 328 F.2d 854 (2d Cir.), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1631, 12 L.Ed.2d 497 (1964).

allegations is a type of transaction in which the solvency of Parr is directly relevant to a customer's decision to engage in the transaction. The complaint alleges that Herbert was engaging in repurchase transactions. These transactions involve the sale of securities by one party to another party subject to an agreement by the seller that he will repurchase the securities from the buyer at a fixed price at a later date. In *Securities & Exchange Commission v. Drysdale Securities Corporation*[14] our Court of Appeals held that alleged misrepresentations made with respect to the financial condition of a company selling underlying securities, is fraud in connection with the sale of securities and falls within section 10(b) and Rule 10b–5. The Court based its holding on the idea that such misrepresentations directly involve the consideration for the securities transaction and therefore are closely linked to transfers of the securities. The Court held that part of the consideration offered by the seller was a promise to repurchase and that this promise is rendered worthless by the company's insolvency. In the language of the Court, "Unlike a pledge of securities in a traditional secured financing, in which the financial health of the lender is irrelevant to the value of both the pledged securities and the pledge itself, DGSI's financial strength was essential to the value received by the other party in a securities transaction."[15]

Thus, to the extent Herbert was engaging in repurchase transactions involving Parr and its customers, the solvency of Parr is not merely "but for" cause, but rather becomes clear proximate cause in inducing customers to engage in repurchase transactions with Parr.[16] Section 17 of the Securities Exchange Act of 1934 provides the

the principal regulatory tool by which the Commission and the Exchange monitor the financial health of brokerage firms and protect customers from the risks involved in leaving their cash and securities with broker-dealers. The information contained in the [sec.] 17(a) reports is intended to provide the Commission, the Exchange, and other authorities with sufficiently early warning to enable them to take appropriate action to protect investors before the financial collapse of the particular broker-dealer involved.[17]

Thus, since the financial solvency of Parr is of vital importance to investors' decisions to engage in repurchase transactions with Parr, the reliance of the public on PMM's duty to perform a competent audit and insure that any registered broker is solvent is justified. It is legitimate to expect that in conducting an audit and in monitoring the operations and accounting of a broker-dealer as part of the regulation of that broker-dealer, its insolvency would be exposed. In making a decision with regard to transacting a repurchase agreement with a broker-dealer, the very existence of the regulatory system justifies reliance on the performance of duties of those who play a role in the regulatory system's operation. Plaintiff alleges that had PMM competently performed its duty it would have unearthed Parr's insolvency and notified the SEC.

Moreover, plaintiff's Second Count alleges securities fraud violations under section 10(b) and Rule 10b–5 in relation to the purchase and sale of fictitious securities. This aspect of plaintiff's suit seeks damages resulting from "fraudulent transactions involving the purchase and sale of Securities during the period following completion of the 1983 Audit...."[18] and it is alleged that these fraudulent transactions

**14.** 785 F.2d 38 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986).

**15.** *Id.* at 42; *see also Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13 (2d Cir.1986).

**16.** *Cf. Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13, 17–18 (2d Cir.1986).

**17.** *Touche Ross & Co. v. Redington,* 442 U.S. 560, 570, 99 S.Ct. 2479, 2486, 61 L.Ed.2d 82 (1979).

**18.** Complaint at para. 69.

took place because PMM, "by certifying Parr's financial statements for the year ended October 31, 1983, enabled Herbert to continue to engage in such practices and thereby aided and abetted such activity by Herbert." [19]

PMM's role in the regulatory process imposed upon it a duty of disclosure to the SEC. PMM, as the auditor of a broker-dealer was required to deliver to the SEC an opinion certifying the annual financial statements of Parr.[20] Further, PMM also had a continuing duty to bring any subsequently discovered deficiencies to the attention of the chief financial officer of Parr, and if that officer did not satisfactorily inform the SEC and Stock Exchange of the deficiencies, then it had the responsibility of informing the SEC itself.[21] This duty of disclosure, in the context of such a heavily regulated industry, gives rise to a public duty to render accurate audits. As part of their reliance on the regulation of broker-dealers under the Securities Exchange Act and the Code of Federal Regulations promulgated thereunder, Parr's customers foreseeably and reasonably relied on PMM's performance of that duty in deciding to engage in purchases of securities through Parr.

A certified public accountant may practice his profession only upon express authority of the State after the State has tested his professional ability and found him trustworthy.[22] When such a licensed professional undertakes a statutorily mandated audit of a client, and where the statute and the regulations promulgated thereunder require the accountant to submit certifications of his client's financial statements to public agencies who, based upon such information are empowered to decide whether or not the client may continue to sell securities to the public, the accountant is acting, in a sense, as a quasi-public official. The failure of the public agencies to act against a broker-dealer justifies the purchasing public in believing that it is in good standing with respect to the requirements of law, and this reliance relates directly to a customer's decision to purchase securities through that broker-dealer. Had the information concerning Parr's insolvency and fraudulent activities been disclosed as required, the SEC was under a duty to take appropriate action to protect the public. Indeed, had the facts as to Parr's actual condition been disclosed, there can be little doubt that Parr's operations would have been halted.

The material misstatements in Parr's financial statements were certified to by PMM, and PMM's alleged failure to disclose the material deficiencies in Parr's operations or to discover Herbert's fraud is alleged to have deceived "the community of investors" into believing that Parr was a *bona fide*, registered broker, lawfully entitled to engage in the brokerage business. It is common sense that an accountant engaged in such activities can reasonably foresee that not only the regulatory agency but also the purchasing public will rely upon the audit.[23] The fact that the complaint fails to allege direct reliance by customers of Parr on the company's financial statements or PMM's certification of those statements is irrelevant. An analogy can be drawn to the doctrine of "fraud on the market" which is premised upon the notion that deception of the marketplace itself amounts to actionable fraud. The theory presumes reliance, even if the individual victim did not see the offending statement.[24]

In *Panzirer v. Wolf*,[25] our Court of Appeals explained the presumption of reliance

19. *Id.*

20. 17 C.F.R. sec. 240.17a–5(d)(6).

21. 17 C.F.R. sec. 240.17a–5(h)(2).

22. N.Y.Educ.Law sec. 7404.

23. *Cf. Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 575 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982).

24. *See, e.g., Panzirer v. Wolf*, 663 F.2d 365 (2d Cir.1981), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982).

25. 663 F.2d 365 (2d Cir.1981), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982).

under the fraud on the market theory by stating that "an investor relies generally on the supposition that the market price is validly set and that no unsuspected fraud has affected the price." In *Panzirer* our Court of Appeals extended the presumption of reliance to include not only those investors who rely on the integrity of the market price but also the integrity of the market in producing the information reported or "heard on the street." [26]

Here plaintiff alleges that the material misstatements and omissions in Parr's financial statements, which were certified by PMM, allowed Parr to retain its broker-dealer registration and thereby enabled Herbert to continue his fraudulent conduct.[27] In fact, the reliance alleged by plaintiff is not reliance on the integrity of the market, but rather on the integrity or operation of the regulatory process which is designed to insure the solvency and legitimate operation of broker-dealers in order to protect the public in transacting business with them. An investor does and should be able to rely on the regulatory process' regulation of a broker-dealer to assure the broker-dealer's solvency and legitimacy, including the legality, value, and integrity of securities sold through the broker-dealer by one of its officers.

It must be emphasized that whether or not the conduct charged against PMM was of such recklessness or reckless indifference to allow the inference of scienter required to hold PMM liable as an aider and abettor, or whether or not PMM was negligent, is an issue of fact to be resolved upon a trial.

In conclusion, the Second Count of plaintiff's complaint adequately alleges the elements of scienter and "substantial assistance" required to state a claim for aiding and abetting liability under the securities laws. Defendant's motion to dismiss

the Second Count of the complaint is denied.

---

**26.** *Id.* at 368.

**27.** Plaintiff's Memorandum at 38–9.