Aron GREENWALD, et al., Plaintiffs,

v.

Bernard "Fred" MANKO, Jon Edelman, Robert G. Bushnell, Jr., et al., Defendants.

No. 92CV0725.

United States District Court, E.D. New York.

Dec. 29, 1993.

Beigel & Sandler (Bijan Amini, Lewis S. Sandler, Elizabeth Toll, of counsel), New York City, for plaintiffs.

Rosenman & Colin (Marshall H. Fishman, of counsel), New York City, for defendants Vincent Tese and James Sinclair.

Hugh Janow, pro se.

Broom & Eilen (Howard Eilen, of counsel), New York City, for defendants Eleanor Goudreau and Archibald Devlin.

Schulte Roth & Zabel (David S. Eagle, of counsel), New York City, for defendants Coopers & Lybrand and Mark Rachleff.

Thomas J. O'Donnell, Oakbrook Terrace, IL, for defendant John A. Possidoni.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiffs, investors in various limited partnerships organized by defendant Bernard Manko and others, filed the initial complaint in this action on February 13, 1991, alleging that the then named defendants defrauded plaintiff, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. Jurisdiction is alleged under RICO.

On April 2, 1993 plaintiffs filed an amended complaint (herein called "the complaint"), naming additional defendants, including Vincent Tese and James Sinclair. These two have moved to dismiss the complaint against them on the grounds that it (a) fails to state a claim, (b) fails to plead claims with requisite particularity, (c) alleges claims barred by the statute of limitations, and (d) states common law claims over which the court lacks jurisdiction.

Plaintiffs then cross-moved for leave to file a second amended complaint (herein called "the amended complaint"). Defendants Tese and Sinclair oppose the motion on the ground that the proposed pleading does not properly state a claim and in any event is barred by the statute of limitations. Tese and Sinclair also ask for Rule 11 sanctions.

I

(a) *The complaint*

The allegations of the complaint, insofar as they are pertinent to the motion of Tese and Sinclair to dismiss, are in summary the following.

During the period 1978 to 1983 plaintiffs made investments in various limited partnerships organized, marketed, and managed by defendant Manko and other defendants (collectively referred to as "the Manko group"). The Manko group was a general partner in Arbitrage Management, which held itself out as a broker-dealer in U.S. Government-backed securities and in the management of arbitrage investment accounts.

In 1979 the Manko group embarked on a scheme through Arbitrage Management and affiliated entities to offer what purported to be tax-advantaged investments. The group represented to investors that the transactions to be entered into would be profit-motivated and not simply risk-free tax-motivated trades. These representations were material because plaintiffs wished not only to invest for a profit but also to obtain favorable tax deferrals and deductions, as the investors and the group knew the Internal Revenue Service (IRS) would disallow tax benefits derived from transactions that lacked eco-

nomic substance or were primarily tax-motivated.

The Manko group's representations were knowingly false. It planned to and did engage in transactions either wholly fictitious or prearranged to preclude the investors from achieving economic gains. As a result plaintiffs lost their investments and incurred large income tax deficiencies, together with interest and penalties.

One of the investment vehicles that the Manko group established to defraud investors was in the form of discretionary trading accounts managed by Arbitrage Management through which the group purported to engage in legitimate straddle transactions in U.S. Treasury bill put options. The group represented to plaintiffs that there was an active market in these put options so that there was a possibility of gain or loss to an investor. In fact there was no such market.

The Manko group simply generated fictitious trades, insuring that plaintiffs always lost money paid to the group in the form of commissions. The complaint does not mention Tese and Sinclair as involved in these discretionary trading accounts.

Between 1978 and 1983 the Manko group used another means to defraud plaintiffs. It solicited plaintiffs to invest in limited partnerships, falsely representing that it would not engage in transactions lacking any opportunity to make a profit.

In fact the group had predetermined to use the same bogus government option transactions as had been used with the discretionary trading accounts. In 1982 and 1983 the group organized three companies through which it caused the partnerships to engage in fictitious "repo" transactions to generate interest deductions. The sole purpose was to generate bogus tax losses to be passed on to plaintiffs.

Legitimate traders used these repurchase agreements, or "repos," to finance purchase of U.S. Government-backed securities. In substance, in such a legitimate repo transaction a trader when purchasing a security enters into a financing agreement with the seller whereby title remains with the buyer who agrees to sell it back to the seller at a specified price (which included a fixed interest rate) at a specified future time. In order for the trader, the initial buyer, to make a profit he has to sell the security on the market at a sufficiently appreciated price so that he realizes more than the "repurchase" price including the interest charged.

The repos engaged in by the Manko group were entirely fictitious and existed only on paper. It prepared trading tickets purporting to show trades with T.S.M. Holding Company (herein "TSM"), a shell corporation Manko "borrowed" from Tese and Sinclair. It had no assets, business, employees, or bank account. It was simply a name inserted on bogus trading tickets.

The fictitious trade tickets showed the purchase by one of the group's companies of a government security from TSM, and the entry into and the closing of repo agreements with TSM. The group, on both sides of the purported transactions, simply passed on the false interest expenses to the limited partners and thus ultimately to plaintiffs.

The allegations in the complaint concerning Tese and Sinclair are sparse. In describing TSM, paragraph 37 says, on information and belief, that it was owned by Tese, Sinclair, and Manko prior to October 1982. Paragraphs 38 and 39 say, on information and belief, that Tese and Sinclair "encouraged the use of TSM as a seeming counterpart to fictitious and prearranged trades" with the partnerships. Paragraph 37 says that Tese and Sinclair sold TSM in October 1982.

Paragraph 61 of the complaint alleges that on February 8, 1989 Manko was indicted in the United States District Court of the Southern District of New York for tax fraud and aiding and abetting the filing of false tax returns of limited partnership investors such as plaintiffs, and that from these criminal proceedings plaintiffs first learned of the wrongdoing alleged in the complaint.

(b) *The amended complaint*

The proposed amended complaint adds some further allegations about Tese and Sinclair. It says that they were owners of TSM from July 1982 to October 1982, that they

"aided and abetted and lent substantial assistance" to Manko by advising "as to the structure of the trades" and by "authorizing and encouraging" Manko "to use a dormant shell" as a seeming counterpart to fictitious and prearranged trades, and "profited from such trading activity knowing full well" that investors had invested in the partnerships with the expectation that the trades would be *bona fide* (paragraphs 35 and 36).

Paragraph 76 states, in substance, the following. Tese and Sinclair were "intimately involved" in the decision to use TSM for the trades and knew that Manko had created partnerships. Sinclair sent Manko to seek out Tese's approval of the transactions from a tax standpoint. As a result Tese gave Manko discretion to trade for TSM provided "the trades were risk-free repos to maturity." At Tese's request Manko explained the details of the trades to the accountant and the operations manager of Tese and Sinclair. Both Tese and Sinclair approved the use of TSM in order to earn an agreed upon financing fee.

The amended complaint also makes new and different allegations as to the date when plaintiffs had notice of the wrongdoing. Paragraph 62 now alleges that it was not until about 1992, after plaintiffs' counsel reviewed a copy of the minutes of the criminal trial of Manko, that plaintiffs were "first on notice of the involvement of the defendants in the business of the Partnerships."

## II

■ The first, second, and third claims in the complaint allege violations by Tese and Sinclair of RICO, 18 U.S.C. § 1962(c) and (d). Tese and Sinclair say these claims are barred by the RICO statute of limitations of four years from the time the action accrues. *See Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987).

In *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied, Soifer v. Bankers Trust Co.*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989), the Court of Appeals for the Second Circuit adopted a rule of "separate accrual," which means that "each time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred." 859 F.2d at 1105; *see also State Farm Mut. Automobile Ins. Co. v. Ammann*, 828 F.2d 4, 5 (9th Cir.1987) (Kennedy, C.J., concurring). Once the cause of action accrues, a new four-year statute of limitations begins to run regardless of when the first act causing damage may have begun. *Cruden v. Bank of New York*, 957 F.2d 961, 977 (2d Cir.1992); *see also Bankers Trust Co.*, 859 F.2d at 1104–05.

The complaint was filed on April 2, 1993, and plaintiffs may not recover damages for any RICO injury they discovered or should have discovered before April 2, 1989.

The complaint is unclear as to when plaintiffs discovered or should have discovered their injuries. The allegations against Tese and Sinclair do not allege they did anything after October 1982.

The complaint states that plaintiffs learned of "the wrongdoing" during the course of Manko's criminal proceedings, which began with the indictment on February 8, 1989. But the complaint gives no specific dates as to when plaintiffs learned of their injuries from the alleged wrongful acts.

Under *Bankers Trust Co.* an action accrues "for a specific injury on the date the plaintiff discovers or should have discovered that injury." Based on the facts as presented in the complaint, plaintiffs should have discovered their injury well before April 2, 1989. The court will thus dismiss the complaint's RICO claims against Tese and Sinclair.

The common law fraud and misrepresentation claims will also be dismissed in light of the dismissal of the federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## III

Tese and Sinclair oppose the motion to file the proposed amended complaint because it could not withstand a motion to dismiss under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The court tests

the proposed complaint by the standards imposed by these rules.

Tese and Sinclair say, among other things, that the amended complaint is barred because it does not show that the alleged injuries inflicted by Tese and Sinclair occurred within the applicable four-year period.

As noted above, under the *Bankers Trust Co.* case, the date on which a plaintiff's claim under RICO arises is the date when that plaintiff discovers or should have discovered the "specific injury" caused by defendant. *Bankers Trust Co.*, 859 F.2d at 1103; *see also Moeller v. Zaccaria*, 831 F.Supp. 1046, 1051 (S.D.N.Y.1993). The injuries that each plaintiff allegedly sustained are, according to the amended complaint, the loss of his or her investments, and the amounts assessed against him or her by reason of the disallowance of tax deductions by the Internal Revenue Service (paragraphs 117 and 131).

The amended complaint does not state the dates when these injuries for each plaintiff were sustained. This omission is curious given the Southern District of New York's recent holding in *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F.Supp. 608, 625 (S.D.N.Y.1990), a case in which plaintiffs' counsel, Beigel & Sandler, represented another group of plaintiffs who claimed to have been defrauded by partnerships that offered tax deductions. The court stated that plaintiffs' knowledge of "their injury, the loss of their investment and any possible benefits from that investment ... [occurred] ... when the Internal Revenue Service disallowed their tax deductions." *See also Mirman v. Berk & Michaels*, 91 Civ. 8606, 1992 WL 332238 at *2–3, 1992 U.S.Dist. LEXIS 16707, at *11 (S.D.N.Y. Oct. 26, 1992) (also argued by Beigel & Sandler, holding that when plaintiffs had knowledge of IRS inquiry into arbitrage partnerships that failed as tax shelters, statute of limitations will not be tolled). It is not as if plaintiffs' attorneys are unfamiliar with this area of legal practice. They have represented plaintiffs in many other cases involving tax shelter partnerships. *See, e.g., O'Brien v. National Property Analysis Partners*, 719 F.Supp. 222 (S.D.N.Y.1990), 740 F.Supp. 276 (S.D.N.Y. 1990), aff'd, 936 F.2d 674 (2d Cir.1991);

*Myers v. Finkle*, 758 F.Supp. 1102 (E.D.Va. 1990), aff'd, 950 F.2d 165 (4th Cir.1991); *Gurfein v. Sovereign Group*, 826 F.Supp. 890 (E.D.Pa.1993); *Adler v. Berg Harmon Assocs.*, 790 F.Supp. 1222 (S.D.N.Y.1992), 790 F.Supp. 1235 (S.D.N.Y.1992), 816 F.Supp. 919 (S.D.N.Y.1993); *In Re Integrated resources Real Estate Ltd. Partnerships Secs. Litigation*, 815 F.Supp. 620 (S.D.N.Y.1993); *Landy v. Heller, White & Co.*, 783 F.Supp. 125 (S.D.N.Y.1991); *Hastie v. American Agri–Corp*, 774 F.Supp. 1251 (C.D.Ca.1991); *Duke v. Touche Ross & Co.*, 765 F.Supp. 69 (S.D.N.Y.1991); *Hayden v. Feldman*, 753 F.Supp. 116 (S.D.N.Y.1990); *Dymm v. Cahill*, 730 F.Supp. 1245 (S.D.N.Y.1990); and the cases cited elsewhere in this Memorandum and Order.

It is not enough for plaintiffs to allege generally, as they do in paragraph 62 of the amended complaint, that they "were first on notice of the involvement of the defendants in the business of the Partnerships" in 1992. It appears that any injury to a plaintiff may have occurred much earlier.

■ Plaintiffs argue that the statute of limitations should be tolled. A RICO plaintiff may show fraudulent concealment sufficient to toll the running of the statute of limitations if the plaintiff establishes "either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083–84 (2d Cir.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988) (Clayton Act claim); *see also Bankers Trust Co.*, 859 F.2d at 1105 (noting that "standard tolling exceptions apply" in civil RICO action and citing *Hendrickson Bros.* as an example). In addition, a plaintiff must also show that plaintiff's remaining in ignorance of the injury was not due to his or her lack of diligence. *New York v. Hendrickson Bros., Inc.*, 840 F.2d at 1083–84.

If a plaintiff was disallowed partnership deductions by the IRS, or had a partial or total loss of his partnership investment before April 2, 1989, that plaintiff was "injured" before that date. It seems unlikely that such a plaintiff could be deemed diligent without

making further inquiry as to the existence of a claim against the defendants for such an injury, particularly if that plaintiff had some knowledge of the indictment of Manko for tax fraud and for "aiding and abetting the filing of false tax returns of limited partnership investors" as alleged in the complaint. *See generally Landy,* 734 F.Supp. at 625.

In any event the amended complaint makes no allegation of any affirmative acts of concealment by Tese and Sinclair of their activities in the months of July through October 1982, more than ten years before the filing of the complaint against them. The complaint alleges fraudulent concealment by defendants other than Tese and Sinclair. But as the Southern District of New York has held in two recent arbitrage partnership-tax deduction cases in which Beigel & Sandler represented the plaintiffs, "the doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the concealment." *Griffin v. McNiff,* 744 F.Supp. 1237, 1256 n. 20 (S.D.N.Y.1990) (quoting yet another Beigel & Sandler case, *O'Brien v. National Property Analysis Partners,* 719 F.Supp. 222, 232 (S.D.N.Y.1989)).

The motion to file the amended complaint against Tese and Sinclair is denied on the ground that plaintiff's allegations do not show it was brought within the applicable four-year statute of limitations. Plaintiffs may have leave to move to file a further amended complaint making, consistent with Rule 11 and with this decision, the requisite allegations.

The court does not now reach the other grounds urged by Tese and Sinclair to deny the motion, and reserves decision on the present application for Rule 11 sanctions.

### III

The motion of Tese and Sinclair to dismiss the "amended complaint" as to them is granted. The motion of plaintiffs for leave to file a "second amended complaint" is denied with leave to file a further motion.

So ordered.