Ajitkumar R. BUTALA, Gita A. Butala, Bhuprenda V. Dudhia, Surendra D. Mahadevia, Panna S. Mahadevia, Pankaj Mehta, Smitha Mehta, Aliakbar Noorani, Bipin Parikh, Dilip J. Patel, Chhaya M. Patel, Rajnikant Patel, Usha Patel, Ramachandra G. Patel, Jasumati Patel, Rajnikant Shah, Subodhchandra Trivedi and Sudha Trivedi, Plaintiffs,

v.

Mahesh AGASHIWALA and Loma Agashiwala, Defendants.

No. 95 Civ. 936 (JGK).

United States District Court, S.D. New York.

Feb. 24, 1996.

Krishnan S. Chittur, New York City, for Plaintiffs.

Sheldon S. Lustigman, John M. Burns III, Lustigman Firm, New York City, for Defendant Mahesh Agashiwala.

Joseph Bartfield, New York City, for Defendant Loma Agashiwala.

## OPINION AND ORDER

KOELTL, District Judge.

This case is brought by twenty individual investors against two accountants, Mahesh and Loma Agashiwala. The plaintiffs assert two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and three supplemental claims under New York law for fraud, negligent misrepresentation and breach of fiduciary duty. The plaintiffs allege that the defendants made statements with respect to certain real estate investments that were fraudulent and form the basis for the underlying predicate acts of securities fraud under Sections 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o (c), and Sections 5, 12 and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77*l*, 77q(a), and mail fraud under 18 U.S.C. § 1341. The plaintiffs allege that the defendants conducted and participated in the conduct of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (Count I), and conspired to do so in violation of 18 U.S.C. § 1962(d) (Count II). The plaintiffs seek compensatory damages in the amount of their lost investments, treble damages and attorneys' fees and expenses.

The defendants move (i) to dismiss both RICO claims pursuant to Fed.R.Civ.P. 12(b)(6) as time barred, or, (ii) in the alternative, to dismiss the complaint for failure to plead fraud with particularity under Fed. R.Civ.P. 9(b), or, finally, (iii) to dismiss the

second RICO claim for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons that follow, the defendants' motion to dismiss is granted without prejudice to the plaintiffs' filing an amended complaint to remedy the defects in pleading both with respect to fraudulent concealment and with respect to failure to plead fraud with particularity as to all twenty plaintiffs.

### I.

On a motion to dismiss, the Court " 'must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.' " *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)) (quoting *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994)). In the present case, the Complaint alleges the following facts.

Some of the twenty plaintiffs in this action were accounting clients of the defendants, while the others were friends and co-investors of such clients. (Compl. ¶¶ 1, 15.) The defendants, with others, organized a real estate venture to build residential townhouses and condominiums in Newark, New Jersey. (Compl. ¶¶ 10–11.) The defendants prepared financial projections that showed anticipated returns in excess of 140% for each of the limited partnerships. (Compl. ¶ 12.) The defendants also made oral representations, among which were that (i) investors would realize at least a 15% annual return, (ii) investors would receive a full return of capital by February 1990, (iii) the managers of the venture were experienced, reliable and trustworthy, (iv) a performance bond of $1.5 million had been put up by the contractors, (v) the defendants were the accountants for the real estate venture, and (vi) the defendants were co-investors in the limited partnerships. (Compl. ¶¶ 16–20.) Subsequently, between 1987 and 1988, the plaintiffs invested in the limited partnerships. Shortly after each investment closed, the plaintiffs began to receive monthly distribution checks, allegedly representing installments on their 15% annual return. (Compl. ¶ 33.) In April 1989,

however, the monthly checks bounced. (Compl. ¶ 40.) No further checks were sent. Consequently, the plaintiffs did not recover their capital by February 1990, nor did they realize a 15% annual return or total returns in excess of 140%. Furthermore, one defendant sent a letter to investors dated June 23, 1989, indicating that the real estate venture was having "problems." (Compl. ¶¶ 40–41.) The plaintiffs allege that a meeting was held on June 29, 1989 between the defendants, plaintiffs and other investors, although the Complaint does not indicate who attended or what was said or done. (Compl. ¶ 43.)

The plaintiffs further allege that the defendants claimed to have been duped by the managers of the real estate venture and that the defendants coordinated lawsuits brought against those managers and took other actions to curtail the losses. The plaintiffs maintain that the defendants concealed their own part in the fraud by controlling these lawsuits, and that the plaintiffs only recently learned of the defendants fraudulent acts. (Compl. ¶¶ 44, 45.) Accordingly, the plaintiffs now sue the defendants for violations of RICO arguing that the defendants themselves, and in conspiracy with others, conducted an enterprise through a pattern of racketeering thereby inducing the plaintiffs to make the doomed investments.

### II.

The defendants move to dismiss the two RICO claims pursuant to Fed.R.Civ.P. 12(b)(6) on the basis of the statute of limitations. The defendants argue that RICO claims have a four-year statute of limitations which began to run when the plaintiffs discovered or with reasonable diligence should have discovered their injuries. The defendants assert that the plaintiffs' injuries occurred at the time they purchased their limited partnership interests and that they had notice of their injuries upon the occurrence of three events: (i) the bounced April 1989 checks, (ii) the subsequent lack of further payments, and (iii) the failure to recover their capital as promised by February 1990. The defendants argue that these events put the plaintiffs on notice of their injuries and that, therefore, the statute of limitations be-

gan to run no later than February 1990. Since more than four years elapsed between February 1990 and the filing of this lawsuit on February 9, 1995, the suit is untimely. In response, the plaintiffs argue first that the statute did not begin to run until their damages were "finally determined in 1994[,]" (*see* Pls.' Mem. Opp'n Defs.' Mot.Dismiss at 10), and that, therefore, their claims are timely. Second, the plaintiffs argue that even if the statute began to run when the limited partnerships were purchased, the statute was tolled on the basis of the defendants' fraudulent concealment.

### A.

■ The statute of limitations for civil enforcement actions under RICO is four years. *See Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). A cause of action under RICO accrues when the plaintiff suffers an injury, and the statute of limitations begins to run when the plaintiff discovers or should discover that injury. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989); *see In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.*, 850 F.Supp. 1105, 1117–18 (S.D.N.Y.1993) ("The RICO limitations test here, then, is an objective one, to wit, when a reasonable person should have discovered the RICO injury, the RICO statute of limitations will start to run."); *Ackerman v. Nat'l Property Analysts, Inc.*, 887 F.Supp. 494, 503 (S.D.N.Y. 1992). In the case of the purchase of allegedly fraudulent limited partnerships, ordinarily the injury occurs at the time of purchase. *See Fisher v. Reich*, No. 92 Civ. 4158, 1995 WL 23966, at *3 (S.D.N.Y. Jan. 10, 1995) ("Where, as here, plaintiffs acquired limited partnership interests based upon the defendants' alleged fraudulent statements and offering material, the injury to plaintiffs is the purchase of the partnership interests."); *Ackerman*, 887 F.Supp. at 503–04 ("[T]he injury to plaintiffs is the actual purchase of the partnership interest rather than each subsequent payment of that interest."); *Gould v. Berk & Michaels, P.C.*, No. 89 Civ. 5036, 1990 WL 41706, at *5 (S.D.N.Y. Apr. 5, 1990) ("A [securities-based] RICO cause of action accrues on the date of the last sale to plaintiffs, subject to tolling for fraudulent concealment.").

■ The plaintiffs' argument that their cause of action did not accrue until their damages were ascertainable is premised on a misunderstanding of the difference between when an injury occurs and when the damages resulting from that injury are fully quantifiable. The plaintiffs contend that their losses were not "crystallized" until the 1994 disposition of certain lawsuits allegedly controlled by the defendants. The plaintiffs rely on several cases where the injuries suffered resulted from the denial of tax benefits and the courts held that a RICO action accrued at the time of the adverse tax ruling rather than the time the investments were purchased. *See Rohland v. Syn–Fuel Assocs.– 1982 L.P.*, 879 F.Supp. 322 (S.D.N.Y.1995); *Toto v. McMahan, Brafman, Morgan & Co.*, No. 93 Civ. 5894, 1995 WL 46691, at *6 (S.D.N.Y. Feb. 7, 1995); *Mazella v. Rothschild Reserve Int'l, Inc.*, No. 89 Civ. 4675, 1992 WL 138321, at *3 (S.D.N.Y. June 3, 1992). These cases do not further the plaintiffs' argument since they concern whether the injury occurred at all and not whether the statute of limitations should only begin to run once the full amount of damages is ascertainable. *See, e.g., Rohland*, 879 F.Supp. at 332 (plaintiffs could not maintain RICO claim until tax court decision denied deductions).

In the present case, the plaintiffs' alleged injuries occurred when they purchased the limited partnership interests in late 1987 and early 1988. (*See* Compl. ¶¶ 20, 21, 33.) The plaintiffs allege that these investments were fraudulent from their inception. Consequently, the plaintiffs were injured when they purchased them. Nothing is pleaded indicating that there was ever a question as to whether the plaintiffs were injured at all. The only issue the plaintiffs raise is the amount of their damages, not the existence of them. Accordingly, the plaintiffs' injuries occurred at the time the limited partnership interests were purchased.

**B.**

■ "Once a court determines when the injury occurred, it must calculate the four-year RICO statute of limitations from the date when plaintiff discovered or should have discovered their injury." *Ackerman,* 887 F.Supp. at 503. Therefore, on a motion to dismiss, a RICO claim will be time-barred if the facts alleged in the complaint indicate that the plaintiff, with reasonable diligence, should have uncovered the alleged fraud prior to the limitations period. *See Kinley Corp. v. Integrated Resources Equity Corp. (In re Integrated Resources, Inc. Real Estate Ltd. Partnerships Sec. Litig.),* 851 F.Supp. 556, 567–68 (S.D.N.Y.1994) ("The limitations period for a fraud-based RICO action commences when Plaintiffs are placed on notice of facts which should arouse suspicion."); *Integrated Resources,* 850 F.Supp. at 1118; *Griffin v. McNiff,* 744 F.Supp. 1237, 1255 (S.D.N.Y.1990), *aff'd,* 996 F.2d 303 (2d Cir. 1993). "The time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather the statute runs from the time at which the plaintiff should have discovered the general fraudulent scheme." *Dolan v. Rothschild Reserve Int'l, Inc.,* 1991 WL 155770, at *2 (S.D.N.Y. Aug. 6, 1991) (quoting *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970)).

To determine when the plaintiff should have discovered the scheme requires a two part inquiry: *first,* whether the plaintiffs received information sufficient to alert a reasonable person to the probability that they had been misled, that is, whether the plaintiffs were on inquiry notice; and *second,* whether the plaintiffs responded to such notice with reasonable diligence. *See Lenz v. Associated Inns and Restaurants Co. of America,* 833 F.Supp. 362, 370 (S.D.N.Y. 1993); *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.,* 815 F.Supp. 620, 638–39 (S.D.N.Y.1993). Where the undisputed facts set forth in the complaint establish inquiry notice and the lack of due diligence, "resolution of the issue on a motion to dismiss is appropriate." *Dodds v. Cigna Secs. Inc.,* 12 F.3d 346, 352 n. 3 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994); *see Griffin,* 744 F.Supp. at 1255 ("On a motion to dismiss, when the facts alleged in the complaint indicate that, with reasonable diligence, plaintiffs should have uncovered the alleged fraud prior to the limitations period, the claim will be time-barred.").

■ Here, assuming the allegations in the Complaint are true, there is no doubt that the plaintiffs were on notice of the general fraudulent scheme no later than February 1990. By that time, the plaintiffs were aware of several key facts. They knew their monthly dividend checks had bounced in April 1989 and that payments had not resumed since that time. They also knew that the promised return of capital by February had not occurred and that the guaranteed investment performance of the limited partnership investments had failed to materialize. Indeed, they had been informed in a June 1989 letter from the defendants that there were "problems" with the investments. All of these events were in direct contradiction to the representations made to them by the defendants. A reasonable investor would have had ample reason to investigate the status of an investment for which so much of what had been promised had not come true. *See, e.g., Integrated Resources,* 850 F.Supp. at 1122 (plaintiffs on inquiry notice where they received letter reporting low occupancy rates, "the very facts they claim to be the fraud"); *Lenz,* 833 F.Supp. at 375 ("[C]lear evidence that an investment asset has declined in value or has been subject to an artificially inflated estimate of its value, in direct contradiction of representation made to the plaintiff at the time of sale, constitutes inquiry notice as to the probability of fraud."); *Griffin,* 744 F.Supp. at 1256 (plaintiffs on notice when made aware of unfavorable estimates regarding oil reserves, conflicting with projections, and withdrawal of public accountants); *Henkind v. Brauser,* No. 87 Civ. 4072, 1989 WL 54109, at *7–*8 (S.D.N.Y. May 17, 1989) (plaintiffs on notice where they had "gone through two reporting cycles without having received the promised information about the operation of the Partnership"); *Anisfeld v. Cantor Fitzgerald & Co., Inc.,* 631 F.Supp. 1461, 1466 (S.D.N.Y.1986) (inquiry notice triggered by financial reports showing

partnership suffered losses since inception, rent revenues below projections, occupancy rates below projections, and condition of premises in disrepair); *see also Farr v. Shearson Lehman Hutton, Inc.,* 755 F.Supp. 1219, 1225 (S.D.N.Y.1991) (financial report showed risky, illiquid investment rather than promised conservative one, and put plaintiff on inquiry notice; § 10(b) claim); *Miller v. Grigoli,* 712 F.Supp. 1087, 1092 (S.D.N.Y. 1989) (letters from partnership indicating problems with investment put investor on inquiry notice; § 10(b) claim).

Therefore, the plaintiffs were on inquiry notice no later than February 1990 and the statute of limitations began to run at least by that time.

## C.

The plaintiffs next argue that, even if the statute of limitations had begun, the statute was tolled by the defendants' fraudulent concealment, and that the plaintiffs exercised due diligence once they became aware of the problems with their investments. The plaintiffs argue both that the nature of the fraud was self-concealing and that the defendants took affirmative steps to cover their tracks.

 Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff pleads, with particularity, the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim. *See Griffin,* 744 F.Supp. at 1256 (citing *Donahue v. Pendleton Woolen Mills, Inc.,* 633 F.Supp. 1423, 1443 (S.D.N.Y. 1986)); *see also Bankers Trust,* 859 F.2d at 1105 (applying standard tolling exceptions for civil RICO statute of limitations, citing *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083–84 (2d Cir.), *cert. denied,* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988)). For each of the three elements, the plaintiff must comply with the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure in pleading fraudulent concealment. *See Greenwald v. Manko,* 840 F.Supp. 198, 202 (E.D.N.Y.1993); *Glick v. Berk & Michaels, P.C.,* No. 90 Civ. 4230,

1991 WL 152614, at *9 (S.D.N.Y. July 26, 1991) (citing *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 88 (2d Cir.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961)); *Griffin,* 744 F.Supp. at 1256; *Moll v. U.S. Life Title Ins. Co. of New York,* 700 F.Supp. 1284, 1289–90 (S.D.N.Y.1988).

 With respect to the first element, there are two general varieties of wrongful concealment. The defendant may have taken affirmative steps to prevent the discovery of the plaintiff's injury, or the nature of the wrong itself may have been self-concealing. *See Moll,* 700 F.Supp. at 1289–90 (citing *Hendrickson*). Regardless of which kind is pleaded, however, the doctrine of fraudulent concealment, does not toll the statute unless the plaintiff demonstrates both fraudulent concealment and due diligence.

> The defense of fraudulent concealment, however, does not function as a trump card on issues of due diligence and constructive knowledge, as plaintiff appears to believe. While the doctrine takes into account the information that a plaintiff did not have as a result of defendants' misconduct, a court must still determine whether the information plaintiff did receive sufficed to trigger a duty to inquire. If plaintiff was indeed alerted as to the probability of fraud, the court must examine plaintiff's response to ascertain whether he or she exercised due diligence in investigating the potential fraud.

*Lenz,* 833 F.Supp. at 373 (citation omitted). In other words, "[o]nce an investor has been placed on inquiry notice of his or her claims, alleged assurances respecting the subject investment or unsubstantiated claims of fraudulent concealment will not operate to further extend the RICO limitations period." *Integrated Resources,* 851 F.Supp. at 568; *Lenz,* 833 F.Supp. at 376 n. 12; *Integrated Resources,* 815 F.Supp. at 640 ("[N]either reassurances accompanying the relevant notice nor the continued failure to disclose the facts allegedly misrepresented in the first place, relieves the plaintiff of [the] duty to undertake reasonable inquiry or tolls the statute of limitations."); *Griffin,* 744 F.Supp. at 1256. Therefore, for the plaintiffs to assert fraudu-

lent concealment and toll the statute of limitations, they must demonstrate that the defendants prevented them from investigating the fraud *in spite of* the plaintiffs' exercise of due diligence. *See id.,* 744 F.Supp. at 1256 ("Inasmuch as plaintiffs were put on inquiry notice ... they may not rely on allegations of fraudulent concealment to avoid the limitations bar unless they exercised due diligence in attempting to ascertain the facts related to the alleged fraud, but were nevertheless unable or prevented from discovering the nature of their claim."); *see also Greenwald,* 840 F.Supp. at 202 (to assert fraudulent concealment successfully, plaintiff must also show that "plaintiff's remaining in ignorance of the injury was not due to his or her lack of diligence").

In the present case, with respect to the wrongful concealment element, neither of the plaintiffs' arguments are pleaded with sufficient particularity. First, the plaintiffs merely state in a conclusory fashion that the defendants' fraud was self-concealing, (*see* Pls.' Mem.Opp'n Defs.' Mot.Dismiss at 15), without alleging how any of the aspects of the defendants' misrepresentations obscured their fraud notwithstanding all the information the plaintiffs concededly possessed. Second, the plaintiffs assert that the defendants took affirmative steps to conceal their fraud, specifically that they aligned themselves with the investors and controlled the lawsuits filed against the venture's management, keeping the plaintiffs in the dark. (*See* Compl. ¶¶ 40–45.) The plaintiffs do not elaborate, however, or explain what steps either defendant took to manipulate the lawsuits or frustrate the plaintiffs' efforts to discover the defendants' role in the fraud. In short, neither of the plaintiffs allegations of wrongful concealment are pleaded with sufficient particularity under Rule 9(b).

Moreover, with respect to the second element of fraudulent concealment, the plaintiffs fail to describe how they were prevented from investigating the fraud. No specific facts are alleged indicating why the plaintiffs were unable to surmise that the promises made by the defendants regarding the performance of the investments were simply not coming to pass. Accordingly, the plaintiffs

fail to plead the second element of fraudulent concealment with particularity as well.

In any event, even if the plaintiffs' assertions of wrongful concealment that thwarted discovery of the fraud were adequately pleaded, the plaintiffs utterly fail to demonstrate their own due diligence in response to the appearance of so many conspicuous warnings about their investment. The plaintiffs appear to allege that their diligence consisted of allowing the defendants to bring lawsuits on their behalf, but beyond this broad assertion, no specific facts are alleged.

The plaintiffs further argue that they were under no duty to exercise due diligence because the defendants were their accountants and owed the plaintiffs a duty to disclose the fraud to them. Whatever duties the defendants owed to the plaintiffs, *compare Greenblatt v. Richard Potasky Jewelers,* No. 93 Civ. 3652, 1994 WL 9754, at *4 (S.D.N.Y. Jan. 13, 1994) (citing *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314, 1356 (S.D.N.Y.1982) ("Courts do not generally regard the accountant-client relationship as a fiduciary one.")); *Mishkin v. Peat, Marwick, Mitchell & Co.,* 658 F.Supp. 271, 273 & n. 10 (S.D.N.Y.1987) (Weinfeld, J.) (citing *Fund of Funds* ), their alleged failure to disclose facts would not excuse the plaintiffs' lack of diligence in investigating the facts of which they were unquestionably aware. *See Lenz,* 833 F.Supp. at 373 (plaintiff on constructive notice notwithstanding "fraudulent concealment defense and a fiduciary relationship between plaintiffs and defendants"); *Integrated Resources,* 815 F.Supp. at 640.

Finally, the plaintiffs assert that whether they exerted due diligence is a question of fact that requires a jury determination. But the plaintiffs bear the burden of pleading their own diligence with particularity, and this Complaint is utterly lacking in the details of what steps the plaintiffs took to investigate the condition of their investment once they were on inquiry notice of the probability they had been defrauded. *See Integrated Resources,* 850 F.Supp. at 1123 (plaintiffs bear burden of proving diligence); *Griffin,* 744 F.Supp. at 1256. .

Accordingly, the plaintiffs have failed to plead the requisite elements of fraudulent

concealment, including their own due diligence, and cannot toll the statute of limitations. At the latest, the plaintiffs should have known of the alleged fraud in connection with their investments by February 1990. Since this lawsuit was filed more than four years after that time, the statute has run and both RICO claims are time barred. The Complaint is therefore dismissed pursuant to Fed.R.Civ.P. 12(b)(6).[1]

Because this dismissal is based on the plaintiffs' failure to set forth specific facts to support the elements of fraudulent concealment, a failure to plead with particularity under Fed.R.Civ.P. 9(b), the Complaint is dismissed without prejudice to the plaintiffs' filing an amended complaint alleging fraudulent concealment, including the element of due diligence, with sufficient particularity. *See Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."); *Greenwald*, 840 F.Supp. at 203 (dismissing RICO claims as time-barred but granting leave to replead to make requisite allegations); *Glick*, 1991 WL 152614, at *10 (permitting plaintiffs to replead allegations concerning "their discovery of the fraud and fraudulent concealment sufficient in specificity to satisfy Rule 9(b)").

### III.

In the alternative, the defendants move to dismiss the entire Complaint on the basis of Fed.R.Civ.P. 9(b) in that the plaintiffs fail to allege the specific times, places, participants, and substance of the communications and how such communications furthered the fraudulent scheme. "Where the predicate acts of a civil RICO claim sound in fraud or mistake, the pleading of those predi-

cate acts must satisfy the requirements [Rule] 9(b)." *Toto*, 1995 WL 46691, at *6; *see Landy v. Mitchell Petroleum Technology Corp.*, 734 F.Supp. 608, 622 (S.D.N.Y.1990) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir.1990)). To comply with Rule 9(b), the complaint must allege specifically when and where the misrepresentations took place, the content of those misrepresentations, and the identity of the person or persons making them. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993); *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990). The plaintiff must also explain how the misrepresentations were fraudulent. *See Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989); *Baxter v. A.R. Baron & Co., Inc.*, No. 94 Civ. 3913, 1995 WL 600720, at *3–*5 (S.D.N.Y. Oct. 12, 1995).

The defendants admit that the Complaint does allege some of the times and places when the allegedly fraudulent statements were made with respect to seven of the twenty plaintiffs. As to the remaining thirteen, however, the defendants argue that the time and place elements are missing. Moreover, the defendants assert that the Complaint fails to allege how the communications furthered the fraud. The defendants point to the plaintiffs' broad allegation that the defendants' exertion of control over litigation against the venture's management as the foremost example of lack of specificity. The defendants argue that the Complaint omits any facts with respect to what each defendant did or said with respect to that litigation, or how the plaintiffs relied on anything the defendants did or said to their detriment. The plaintiffs respond by insisting that sufficient facts are alleged and arguing that they

---

1. Plaintiffs also assert the defense of equitable estoppel to the defendants' assertion of the statute of limitations. This argument is wholly untenable because neither the Complaint nor the plaintiffs' moving papers allege anything to indicate how the plaintiffs were prevented from bringing this lawsuit earlier, beyond the speculative inference that other lawsuits were being brought by plaintiffs, other investors, and the defendants. Furthermore, a condition precedent to asserting equitable estoppel is that plaintiffs knew of their cause of action—knowledge they deny having for purposes of their argument of

fraudulent concealment. It is paradoxical for plaintiffs to argue, on the one hand, that they knew about their claim for the purpose of equitable estoppel, but, on the other hand, that they did not know about their injury for the purpose of determining when the action accrued in the first place. *See Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49–50 (2d Cir.1985) (unlike fraudulent concealment, "equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit").

**322**

cannot be expected to recall every specific communication, time and place for events occurring as many as eight years ago.

 The defendants are correct. Insofar as the Complaint does not identify the specific plaintiffs to whom enumerated communications were made, and fails to state times and places for those communications, or indeed, what was said, it is not pleaded with sufficient particularity. Also, the Complaint does not identify the particular misrepresentations made by the defendants to each of the plaintiffs. Accordingly, because the plaintiffs have failed to plead their RICO claims with particularity pursuant to Rule 9(b), the Complaint is dismissed without prejudice to the plaintiffs' right to replead and make the necessary factual allegations. Dismissal on this basis provides an independent and alternative basis for dismissal based on failure to plead fraudulent concealment with particularity under Rule 9(b).[2]

## IV.

The plaintiffs' Third, Fourth, and Fifth Counts assert claims under New York law. Because the claims arising under federal law are dismissed, the Court declines supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Block v. First Blood Assocs.,* 988 F.2d 344, 351 (2d Cir. 1993) (no abuse of discretion to refuse supplemental jurisdiction over state law claims when federal claims were dismissed before trial).

## CONCLUSION

Therefore, the defendants' motion to dismiss the Complaint is **granted** without prejudice to the plaintiffs' filing an amended complaint in accordance with the foregoing,

within thirty (30) days of the date of this Opinion.

**SO ORDERED.**

---

**2.** The defendants also move to dismiss the second RICO count for conspiracy, 18 U.S.C. § 1962(d), for failure to state the claim properly. This claim in turn depends upon the other allegations in the Complaint such as the predicate acts, which have not been pleaded with particularity. Therefore, it is unnecessary to decide whether the conspiracy claim has still further deficiencies.