Irving PARNES, Plaintiff,

v.

MAST PROPERTY INVESTORS, INC., et al., Defendants.

No. 90–CIV–2387 (LJF).

United States District Court, S.D. New York.

Oct. 28, 1991.

**794**

Biegel & Sandler, Ltd., New York City, by Marilyn Neiman, for plaintiff Irving Parnes.

Herzfeld & Rubin, P.C., New York City, by Peter J. Kurshan, for defendant Mast Property Investors, Inc.

## ORDER AND OPINION

FREEH, District Judge.

In this action, plaintiff Irving Parnes ("Parnes") seeks to recover on behalf of himself and all others similarly situated for losses incurred in real estate limited partnerships organized and sold by defendants.[1] Parnes has moved for class certification pursuant to Fed.R.Civ.P. 23. Defendants Mast Property Investors, Inc., Mast Capital Investors, Ltd. (collectively "Mast"), Marvin Greenfield ("Greenfield") and Norman Nick ("Nick") oppose that motion and have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b). For the reasons stated at oral argument on October 28, 1991 and set out below, both motions are denied.

## FACTS

In 1982, Parnes purchased interests in three limited partnerships promoted by Mast and the individual defendants. (Complaint ¶ 4). Parnes alleges that those limited partnerships, as well as the 27 other such partnerships established by defendants, were created as a sham. According to Parnes, companies affiliated with defendants would purchase real estate and then, after holding the property for a brief period, sell it at highly inflated prices to the limited partnerships, earning substantial profits. Based on this scheme, Parnes alleges that: (1) the property appraisals contained in the private placement memoranda were fraudulent because those appraisals stated falsely that the partnerships were paying fair market value for the properties (*e.g.*, Complaint ¶¶ 39–40); and (2) the offering memoranda failed to disclose that the properties would not appreciate in value because the high interest rate "wrap" mortgages on the properties decreased their value below appraised rates (Complaint ¶ 45). (Opposition at 13). More spe-

---

1. Parnes sues personally in connection with the three limited partnerships in which he purchased interests. He also seeks to sue on behalf of the class of investors who purchased interests in any of the thirty limited partnerships promoted by defendants.

cifically, Parnes claims defendants issued fraudulent private placement memoranda in violation of (1) §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "34 Act"); (2) Rule 10b–5; (3) §§ 15 and 17(a) of the Securities Act of 1933 (the "33 Act"); (4) the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and (5) various common law doctrines.

Parnes seeks relief here on behalf of himself and all other investors similarly situated. Accordingly, he has moved for class certification pursuant to Fed.R.Civ.P. 23. The class proposed by Parnes would include investors in all the limited partnerships sponsored by defendants. (Complaint ¶ 4).

Defendants have moved to dismiss all claims grounded on § 10(b) and Rule 10b–5, claiming that Parnes has not stated a cause of action under the federal securities laws and that Parnes has not pled fraud with sufficient particularity. (Motion at 23–42). Defendants have also moved to dismiss all claims under § 17(a) of the 33 Act and RICO. Defendants assert that dismissal of the allegations under federal law requires dismissal of all pendent state law claims as well. In addition, defendants assert that because Parnes signed a release precluding any legal action against one of the three limited partnerships in which he invested, he may not sue that entity now.

## DISCUSSION

### 1. *Motion to Dismiss*

■ In evaluating a motion to dismiss on the pleadings, a court must read the allegations in the complaint "generously" and draw all inferences in favor of the party opposing the motion. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). A complaint should be dismissed under Rule 12(b)(6) only if "it appears 'beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985).

#### a. *The Securities Fraud/State Law Fraud Claims*

■ Under § 10(b) and Rule 10b–5, a plaintiff must allege that "the defendant has misrepresented or omitted to state material facts in connection with the purchase or sale of a security, that the plaintiff relied upon such misrepresentation or omissions to his detriment, and that the misrepresentations or omissions were made with scienter." *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493, 502 (S.D.N.Y.1987) (citations omitted). Consistent with this standard, Parnes has alleged that (1) defendants omitted material facts and affirmatively misrepresented the appraised value of the properties purchased by the partnerships (Complaint ¶¶ 45–46); (2) Parnes and other investors relied on those misrepresentations in purchasing interests in the partnerships (Complaint ¶¶ 44, 47); and (3) defendants knew or should have known that the appraisals contained in the offering memoranda were false. (Complaint ¶ 44). Defendants now argue that Parnes' securities fraud claims are insufficient as a matter of law because he could not have reasonably relied on the allegedly false statements because the offering memoranda contained substantial disclaimers and warnings. (Motion at 23–24).

■ These allegations are sufficient to state a securities fraud claim. Disclaimers may not absolve a defendant of liability for securities fraud if those disclaimers relate only to the financial projections for the proposed investment, and do not discuss the appraisals for property owned by the company or partnership. *See Friedman v. Arizona World Nurseries, Ltd.*, 730 F.Supp. 521, 541 (S.D.N.Y.1990) (specifically stating that cautionary language may be insufficient to disclaim liability where plaintiffs alleged that defendants misrepresented the *then-existing* value of property purchased by limited partnership; motion to dismiss denied as to those counts), *aff'd*, 927 F.2d 594 (2d Cir.1991). Accordingly, defendants' motion to dismiss under Rule 12(b)(6) must be denied.

■ Defendants' Rule 9 motion to dismiss must also be denied because Parnes has described defendants' alleged misrepre-

sentations in sufficient detail to give defendants fair notice of his claims. Under Rule 9(b), a plaintiff alleging fraud must (1) identify the statements he or she claims were false or misleading; (2) state why the plaintiff considers the statements to be fraudulent; (3) state when and where the statements were made; and (4) identify the parties responsible for making the statements. *Cosmas*, 886 F.2d at 11. Parnes has (1) identified the fraudulent statements as the offering memoranda and subsequent partnership-related mailings (Complaint ¶ 39, 50(b)); (2) indicated that those mailings were fraudulent because they included false information regarding the value of the property purchased by the partnerships (Complaint ¶ 45–46); (3) stated that the false statements were made at the time the private placement memoranda were initially mailed, as well as annually, in other partnership-related mailings; and (4) indicated that defendants were responsible for those documents.

 Defendants claim that Parnes may not rely on the offering memoranda alone as proof that each of the defendants participated in the alleged fraud. (Motion at 40). As a general rule, plaintiffs claiming fraud must draw a specific connection between the allegedly fraudulent statements and each defendant, in order that each defendant may be apprised of the particular nature of their participation in the alleged fraud. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). However, an exception to that rule is made where, as here, plaintiff alleges that an offering memorandum was fraudulent and defendants are insiders or affiliates who participated in the offer of the securities. (Complaint ¶ 43) (defendants participated in or directed the writing and distribution of the offering memoranda); *Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986) ("[N]o specific connection between fraudulent representations in the Offering Memorandum and particular defendants are insiders or affiliates partici-

pating in the offer of the securities in question.").

Defendants correctly note that the Second Circuit has emphasized that the exception outlined in *Luce* does not mean that "mere reliance on an offering memorandum or similar document satisfies a pleader's burden under Rule 9(b)." Rather, plaintiffs must still allege " 'particular facts demonstrating the knowledge of defendants at the time that such statements were false.' " *DiVittorio*, 822 F.2d at 1248 (*quoting Luce*, 802 F.2d at 57).

Parnes has pled sufficient facts to demonstrate that defendants had knowledge that the property appraisals contained in the offering memoranda were false. Defendants Greenfield and Nick were officers of defendant Mast Property Investors, Inc., promoter of the limited partnerships. (Complaint ¶ 21–22). Parnes claims that, as "insiders" and promoters of this investment, defendants knew or should have known that their affiliated companies had, only a short time previously, purchased the properties owned by the limited partnerships for a much lower price than the partnerships had paid. Thus, defendants knew or should have known that the price paid by the partnerships and contained in the property appraisals did not reflect the fair market value of the property. With these claims, Parnes goes beyond the mere terms of the offering memoranda, as required by the Second Circuit. Under these circumstances, the pleadings regarding defendants' knowledge of the alleged fraud must be deemed sufficient.

Defendants also claim that Parnes has not pled their intent to commit fraud with sufficient particularity. (Motion at 37). Rule 9(b) specifically states that "[m]otive, intent, knowledge, and other conditions of mind of a person" may be pled generally. Nonetheless, a plaintiff must allege sufficient facts to "give rise to a strong inference that the defendants possessed the requisite fraudulent intent—either intent to defraud, knowledge of falsity, or reckless disregard for the truth." *Friedman*, 730 F.Supp. at 530–31; *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d

Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (*en banc*), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989).

█ Contrary to defendants' claims, the complaint here does suggest that defendants either intended to defraud investors or knew that the appraisals contained in the offering memoranda were false. (Complaint ¶ 44). Parnes alleges that the limited partnerships purchased property at prices substantially higher than those paid by defendants' affiliates only a short time previously. (Complaint ¶ 36). Thus, it is likely that defendants knew that the appraisals contained in the offering memoranda did not reflect the properties' fair market value.

The only weakness in Parnes' complaint is that he fails to identify when each of the mailings subsequent to the original offering were made. (Complaint ¶ 50(b)) (referencing annual mailings to limited partners). Because complaints must be read generously, however, we should find that defendants have received fair notice of Parnes' claims. *See Credit & Finance Corp. Ltd. v. Warner & Swasey Co.,* 638 F.2d 563, 567 (2d Cir.1981) (denying motion to dismiss, in part, because defendant had received fair notice of plaintiff's claims).

### b. *The § 17(a) Claim*

█ Parnes has alleged that defendants also violated § 17(a) of the 33 Act. (Complaint ¶ 2). Defendants have moved to dismiss this claim on the grounds that § 17(a) confers no private right of action. Despite defendants' emphatic assertion that no private right of action exists under the statute, the Second Circuit has not yet decided the issue and the courts in the Southern District are split on the question.

Section 17(a) states:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

In 1978, the Second Circuit held that § 17(a) provided an implied private right of action. *Kirshner v. United States,* 603 F.2d 234, 241 (1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979). Two years later, however, the Supreme Court held that proof of scienter was *not* required under § 17(a)(2) and (3) of the 33 Act, although such proof is necessary in actions under § 10(b). *See Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980). This distinction between § 10(b) and § 17(a) actions appears to have caused the Second Circuit to retreat from its earlier holding, and the Court's most recent decisions state that it has taken "no position" on the question whether § 17(a) confers a private right of action. *See Manufacturers Hanover Trust Co. v. Drysdale Securities Corp.,* 801 F.2d 13, 25 (2d Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985); *Zerman v. Ball,* 735 F.2d 15, 23 (2d Cir.1984).

A number of cases in the Southern District have declined to follow *Kirshner* and have held that no implied private right of action exists under § 17(a). *See Tobias v. First National Bank and Trust Co.,* 709 F.Supp. 1266, 1275 (S.D.N.Y.1989) (citing cases either holding or indicating that no private action exists under § 17(a)). Apparently, only three judges in this district have continued to follow the *Kirshner* rule. *Id.* (citing cases). Neither the Supreme Court nor the Second Circuit have indicated which analysis is correct.

This Court has determined to follow the majority of courts in the Southern District and find no implied right of private action under § 17(a). The Supreme Court's decision to impose a scienter requirement in § 10(b) cases but not § 17(a) cases has created a substantial difference in the proof requirements in the two types of actions. If we were to imply a right of private action under § 17(a), private litigants would then be permitted to circumvent the higher standard of proof required for securities fraud claims under § 10(b). *See Tobias*, 709 F.Supp. at 1275. *But see Ohman v. Kahn*, 685 F.Supp. 1302, 1310 (S.D.N.Y.1988) (stating that, while there are strong arguments against the *Kirshner* result, it remains the law of the circuit and must be followed). Such an anomalous result should be avoided absent binding precedent requiring that finding.

### c. *The RICO Claims*

Parnes contends that defendants Mast Property Investors, Inc. and Greenfield constitute an association in fact or "enterprise," which committed numerous instances of mail fraud by sending out the fraudulent offering memorandum and other fraudulent mailings regarding the limited partnerships. (Complaint ¶ 77–78, 84). Parnes further contends that such mail fraud violated 18 U.S.C. §§ 1962(a), (b), (c), and (d) because (1) the funds obtained through defendants' pattern of racketeering activity were used to establish an enterprise affecting interstate commerce (Complaint ¶ 85); (2) through the pattern of racketeering activity, defendants acquired control of an enterprise affecting commerce (Complaint ¶ 90); (3) defendants involved in the enterprise engaged in a pattern of racketeering activity (Complaint ¶ 91); and (4) defendants conspired to commit these RICO violations. (Complaint ¶ 92).

■ In order to establish liability under RICO, a plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise'

(7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1983). Defendants have moved to dismiss these claims on the grounds that Parnes has failed to plead the "predicate acts" of securities fraud with sufficient particularity. (Motion at 43). However, as discussed above, the securities fraud claims are well-pled. As a result, Parnes' RICO claims are also sufficient under Rule 9(b). *See Bruce v. Martin*, 691 F.Supp. 716, 727 (S.D.N.Y.1988) (if allegations of securities fraud are adequately pled, RICO claims grounded on those allegations should not be dismissed); *In re Gas Reclamation*, 659 F.Supp. at 512 ("Allegations which are sufficient to sustain a claim of securities fraud may also ground a claim of 'racketeering activity.' "); *Friedman*, 730 F.Supp. at 546 (same).

■ Defendants' additional argument that Parnes has not alleged sufficient continuity of illegal conduct to constitute a "pattern" of racketeering activity must also be rejected. It is now well-established that a RICO "pattern" will not be found "without some showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity." *United States v. Indelicato*, 865 F.2d 1370 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989). As the Supreme Court has noted, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989) (citations omitted). The Court emphasized the requirement that the predicate acts extend over a *substantial* period of time: "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the] requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.*

The complaint here alleges a number of predicate acts of mail fraud, all related to

thirty fraudulent limited partnership offerings sponsored by defendants. While the three limited partnerships challenged by Parnes were all sold in 1980 and 1982, Parnes also claims that defendants implemented the same scheme in connection with 27 other limited partnerships. Under these circumstances, a sufficient pattern of racketeering activity has been alleged. *See Friedman*, 730 F.Supp. at 548 (although sale of interests in fraudulent limited partnership occurred during brief period of time, continuity shown where plaintiff demonstrates that fraudulent conduct are "part of [the] defendants' regular way of doing business").

### d. *Validity of Release as to 1776 Partnership*

Defendants claim that a release signed by Parnes in June 1988 precludes any claims relating to the 1776 Plaza Associates Limited Partnership. (Motion at 59). The release was executed in conjunction with a reorganization of the 1776 partnership under the Bankruptcy Code, and Parnes received a payment in excess of $14,000 at the time he signed the release.

The language of the release clearly states that the signer (Parnes) discharged the partnership and of its affiliates or agents from any causes of action relating to the creation of the partnership. (Ex. A to Kurshan Aff.). In his affidavit, Parnes claims that defendants in this case are not named in the release (Parnes Aff. ¶ 9–10). Parnes further states that he was unaware of defendants' fraud at the time he signed the release, and that the release was not negotiated. (Parnes Aff. ¶ 5, 8).

In New York, a party does not waive his or her right to bring a later legal action for fraud if that party had no knowledge of the alleged fraud at the time the release was signed. *See Rockwood Computer Corp. v. Morris*, 94 F.R.D. 64, 68 (E.D.N.Y.1982) (under New York law, "it is clear that if the plaintiff had no knowledge of the defendant's fraud when it entered into the release, the existence of the release would not insulate the defendant from liability on the plaintiff's claim for breach of fiduciary duty") (and cases cited).

Accepting as true, as we must, Parnes' claim that he had no knowledge of defendants' fraud at the time he signed the release, defendants' motion to dismiss based on that release must be denied.

### e. *The State Law Claims*

Defendants have also moved to dismiss Parnes' breach of fiduciary duty, conspiracy and aider and abettor claims on the grounds that Parnes has not pled those claims with particularity. (Motion at 56). Rule 9 does not require these claims to be pled in great detail. Moreover, because we have found that the securities fraud and other federal claims are sufficient as a matter of law, the Court has jurisdiction to hear any pendent state law claims. Defendants' request to dismiss those claims is denied.

### 2. *Motion for Class Certification*

In order to proceed as a class action, Parnes must satisfy the requirements of Fed.R.Civ.P. 23. Under subsection (a) of the Rule, Parnes must demonstrate that

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Pursuant to subsection (b) of the Rule, Parnes must also show that common questions of law and fact "predominate" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Parnes cannot satisfy this latter requirement. Even if Parnes is correct and the defendants implemented an identical scheme in the sale of each of the thirty limited partnerships, common factual issues do not predominate here. Rather, quite distinct factual questions arise in connection with each partnership (*i.e.* the fair market value of each property; the accura-

cy of the appraisal contained in the offering memorandum; the reasons for the property's decline, if any, in value; and the damages, if any, suffered by each plaintiff).

Apparently, the properties (and thus, partnerships) have all had varying degrees of success. Fraud is difficult to prove, and Parnes will have to demonstrate specific facts supporting his allegations for each of the thirty partnerships. Because those facts are likely to differ substantially from partnership to partnership, a class action is not a superior means of litigating this dispute. *But see Tedesco v. Mishkin*, 689 F.Supp. 1327, 1334 (S.D.N.Y.1988) (allowing case challenging numerous limited partnerships to proceed as class action, stating that "[w]hen plaintiffs allege a common strand of misrepresentations or omissions running through the statements used to promote investment during the class period, or a single common thread to which all the fraudulent activity related, class certification is appropriate under Rule 23(b)(3).").

For the foregoing reasons, defendants' motion to dismiss and plaintiff's motion for class certification are both dismissed.

SO ORDERED.