Dated: New York, New York
        August 30, 1994

Larry K. ROHLAND and Cheryl A. Rohland, et al., Plaintiffs,

v.

SYN–FUEL ASSOCIATES—1982 LIMITED PARTNERSHIP, et al., Defendants.

Mark McCORMICK and Susan McCormick, Plaintiffs,

v.

SYN–FUEL ASSOCIATES—1982 LIMITED PARTNERSHIP, et al., Defendants.

Nos. 89 Civ. 3325 (SWK), 89 Civ. 8593 (SWK).

United States District Court, S.D. New York.

March 3, 1995.

Biegel Schy Lasky Rifkind Goldberg & Fertik by Daniel J. Becka, Peter Ordower, Marilyn Neiman, Chicago, IL, for plaintiffs.

Satetsky Katz & Dranoff by Barry G. Saretsky, Marsha Weinstein, New York City, for defendants Joan Lucks Feinstein, Harold Freidman, Lawrence Mandelker, Howard Mann, Eugene E. Murphy, Pearl Polifka, Sanford Saideman, Steven Steingut, Jerome Tarnoff and Charles S. Webb, III.

Volk, Frankovitch, Anetakis, Reich, Robertson & Hellerstedt by Sidney R. Finkel, Pittsburgh, PA, for defendants Philip Baskin, James J. Flaherty and Raymond Baum.

Rivkin, Radler & Kremer by Janice J. DiGennaro, Uniondale, NY, for defendant Michael Zukerman.

Edward W. Zawacki, New York City, for defendants Keith R. Gaskell, Martin Kaye,

Chronometer Management & Consultants Inc., Syn–Fuel Associates, Limited Partnership, Syn–Fuel Associates—1982, Limited Partnership and Peat Oil and Gas Associates, Limited Partnership.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In these consolidated actions for securities fraud, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO") and related state claims, defendants [1] move, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the complaints. In the alternative, defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part.

### BACKGROUND

#### I. The Partnerships

In 1981 and 1982, plaintiffs, citizens of eight different states, invested in three limited partnerships: (1) Syn–Fuel Associates— 1982, Limited Partnership ("Syn–Fuel 1982"); (2) Syn–Fuel, Limited Partnership ("Syn–Fuel"); and (3) Peat Oil and Gas Associates, Limited Partnership ("POGA") (collectively, the "partnerships"). Each plaintiff invested between $80,750 and $646,000 in the partnerships in an attempt to attain certain economic benefits, including favorable tax consequences.

Defendant Arthur Goldman served as the general partner of both Syn–Fuel 1982 and POGA, while defendant Martin Kaye served as the general partner of Syn–Fuel. The partnerships were created to pursue three businesses: (1) owning, licensing or otherwise exploiting technology related to the production of synthetic fuel from cellulosic materials such as peat and wood; (2) developing a pilot plant to test the commercial feasibility of the experimental process for converting cellulosic materials into synthetic fuel; and

---

1. For purposes of this Memorandum Opinion and Order, "defendants" shall include all named defendants except Arthur Goldman, James M. Aronson, Charles Marino and Sci–Teck Licensing Corp.

(3) oil and gas exploration and development. The patent at issue changed hands several times through various licensing agreements, ultimately vesting with defendant Sci–Teck Licensing Corp., which subsequently licensed the technology to the partnerships. Each partnership received rights to market and exploit the technology in specified geographic regions.

As part of their investment strategy, the partnerships sold the rights to exploit the synthetic fuel technology to certain third parties. For example, the partnerships granted to defendant Fuel–Teck Research and Development, Inc. non-exclusive rights to exploit the technology in exchange for royalty fees derived from sublicensing and sales. Additionally, the partnerships entered into an agreement with defendant Fuel–Teck Oil and Gas, Inc. ("O & G") under which O & G would direct all oil and gas investment, exploration and development operations.

## II. The Memoranda

The partnerships retained the law firm of Baskin & Sears, P.C. ("Baskin & Sears") to provide advice with respect to the tax consequences of the partnerships' activities.[2] Among its services, Baskin & Sears prepared a private placement memorandum for each of the three partnerships (the "Memoranda") which included a description of each partnership and a tax opinion letter (the "Tax Opinion Letters").[3]

The Memoranda contained stern warnings to prospective investors about the partnerships' high degree of risk and potential for loss. The first page of the POGA Memorandum, for example, states in bold, capital letters: "This offering involves a high degree of risk (See 'Risk Factors')." *See* POGA Memorandum, annexed to the Notice of Motion as Exh. "E," at 1. The POGA Memorandum also provides:

The investment described in this Memorandum involves a high degree of risk (see "Risk Factors"). Purchase of Units should be considered only by persons who understand, or who have been advised with respect to, the long-term nature of, the tax consequences of, and risk factors associated with, this investment and can afford a total loss of their investment.

*Id.* at 3. The POGA Memorandum cautions further:

The estimates contained in this Memorandum are prepared on the basis of assumptions and hypotheses which are believed to be reasonable but which are subject to substantial risks and contingencies covering an extended period of time. No assurance can be given that any of the potential benefits described in this Memorandum will prove to be available.

*Id.* at 4.

The POGA Memorandum also contains a section entitled "Risk Factors," which sets out numerous risks associated with the partnerships, including: (1) lack of experience in acquiring, developing or exploring oil and gas properties; (2) inadequate funding; (3) general risks associated with mineral property operation; (4) the speculative nature of oil and gas exploration; (5) potential equipment shortages; (6) lack of insurance; (7) potential property title defects; (8) technological viability; (9) need for adequate land; (10) environmental hazards; (11) uncertain patent protection; (12) infringement liability; (13) limitations on licensing technology; (14) conflicts of interest between the investors and the general partners; (15) lack of arms-length negotiation of contracts and licensing fees; (16) uncertainty as to the tax classification of the partnerships; and (17) tax problems related to the potential impermissibility of certain deductions. *See id.* at 20–32.

The POGA Memorandum details the federal income tax consequences of investing in

---

**2.** Defendants Joan Lucks Feinstein, Harold Friedman, Lawrence A. Mandelker, Howard Mann, Eugene E. Murphy, Pearl Polifka, Sanford Saideman, Stanley Steingut, Jerome Tarnoff and Charles S. Webb, III (collectively, the "Moving Defendants") and Philip Baskin, James J. Flaherty, Raymond Baum and Michael Zukerman ("Zukerman") were members of Baskin & Sears during the relevant time period.

**3.** The Memoranda and Tax Opinion Letters are substantially identical. For convenience, the Court shall refer to the Memorandum and Tax Opinion Letter for the POGA partnership (the "POGA Memorandum and Tax Opinion Letter," respectively).

the partnerships. In addition to advising prospective investors about tax risks, such as the difficulty of anticipating rulings by the Internal Revenue Service (the "Service") and the United States Tax Court (the "Tax Court"), the POGA Memorandum cautions, in capital letters, that "a prospective investor should obtain professional guidance from his own tax advisor in evaluating the tax risks involved." *Id.* at 50.

The Tax Opinion Letters also set forth the possible tax treatments the partnerships may receive by the Service. Specifically, the POGA Tax Opinion Letter states that "[f]rom a federal tax standpoint there are substantial and material risks associated with a limited partner's investment in [the partnership]." *See* POGA Tax Opinion Letter, annexed to the Notice of Motion as Exh. "E," at B–12. The POGA Tax Opinion Letter also advises prospective investors that the Service may determine that the partnerships were not engaged in a "business for profit" and therefore are not entitled to tax deductions pursuant to Section 183 of the Internal Revenue Code.[4] *Id.* at B–38. With respect to this issue, the POGA Tax Opinion Letter concludes:

> The determination of whether an activity is engaged in for profit is based on all the facts and circumstances and no one factor is determinative. Although the General Partner anticipates that the operations of the Partnership will constitute a profit-motivated activity, and therefore that Section 183 should not apply, no assurance can be given that the Service would not contend that it does apply and would not be successful in its contention.

*Id.* at B–39.

Despite the risks associated with investing in the partnerships and the warnings set forth in the Memoranda and Tax Opinion Letters, plaintiffs decided to invest in the partnerships. In connection with the purchase of shares in the partnerships, each investor completed a "suitability questionnaire." By signing this document, the investors affirmed that they possessed "such knowledge and experience in financial and business matters that they are capable of evaluating the merits and risks" of the investment. *See* Suitability Questionnaire, annexed to the POGA Memorandum at C–2. Plaintiffs acknowledged further that they were "willing and able to bear the economic risk of [the] investment," and that their financial commitment would be "reasonable in relation to . . . net worth." *Id.*

### III. Tax Court Ruling and the Present Action

Between 1985 and 1986, the Service began an investigation of the partnerships. Subsequently, in October 1988, the Tax Court ruled that "the partnerships' . . . activity was not a trade or business, lacked economic substance, and was not within the contemplation of Congress in enacting section 174."[5] *Smith v. Commissioner,* 91 T.C. 733, 765, 1988 WL 100255 (1988) ("*Smith*"). Accordingly, the court denied the tax deductions claimed by the limited partners, *see id.,* thereby triggering the present litigation.

On August 18, 1989, plaintiffs in *Rohland v. Syn–Fuel Associates—1982, Limited Partnership,* 89 Civ. 3325 (the "*Rohland* action"), filed their amended complaint, alleging that defendants had "embarked on a scheme to defraud the plaintiffs and other members of the investing public."[6] Amended Complaint

---

**4.** Section 183(a) of the Internal Revenue Code provides:

> In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

26 U.S.C. § 183.

**5.** Section 174(a)(1) of the Internal Revenue Code states:

A taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction.

26 U.S.C. § 174(a)(1).

**6.** Plaintiffs in *McCormick v. Syn–Fuel Associates—1982, Limited Partnership,* 89 Civ. 8593, filed a nearly identical complaint on December 28, 1989. As the complaints are indistinguish-

at ¶ 6. Specifically, plaintiffs allege that defendants induced them into investing in the partnerships through a series of material misrepresentations including, for example, statements regarding: (1) the expected rate of return for licensing fees; (2) expectation of profit; (3) future construction of pilot plants for creating synthetic fuel; (4) the tax consequences of the partnerships; and (5) the economic purpose and value of the investment. *Id.* at ¶¶ 16, 20.

Plaintiffs allege that defendants' actions violate Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (Count One). Plaintiffs allege further that defendants violated Section 17(a) of the Securities Act of 1933 ("Section 17(a)"), 15 U.S.C. § 77q(a) (Count Two) and the RICO statute, 18 U.S.C. §§ 1961 *et seq.* (Count Six).

Plaintiffs also allege several state law claims, including common law fraud (Count Three), negligence (Count Four) and breach of fiduciary duty (Count Five). Plaintiffs seek (1) recission of the investments; (2) monetary damages; (3) attorneys' fees; (4) costs; (5) punitive damages; and (6) a declaratory judgment that plaintiffs are not liable to any defendant for any obligation owed defendants in connection with plaintiffs' investments in the partnerships.

Subsequently, defendants moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaints or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Specifically, defendants argue that (1) Counts One and Six are barred by the statute of limitations; (2) Count Two should be dismissed on the ground that Section 17(a) does not create a private cause of action; (3) Count Six fails to meet the requirements for pleading a RICO claim; (4) Count Six does not plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure; and (6) Counts Three, Four and

Five should be dismissed on the grounds of (a) lack of subject matter jurisdiction if all federal claims are dismissed, (b) failure to state a claim upon which relief can be granted and (c) expiration of the applicable statute of limitations.

## IV. Magistrate Judge Francis' Report and Recommendation

On September 24, 1993, defendants' motion was referred to Magistrate Judge James C. Francis IV for a Report and Recommendation. On January 18, 1994, the Magistrate Judge issued a Report and Recommendation (the "Report"), recommending that the Court (1) grant defendants' motion to dismiss with respect to plaintiffs' Section 10(b) claim and the state claims on statute of limitations grounds; (2) grant defendants' motion to dismiss plaintiffs' Section 17(a) claim on the ground that this provision does not create a private cause of action; and (3) deny defendants' motion to dismiss the RICO claim.

Specifically, the Magistrate Judge determined, after a detailed analysis, that the Court must apply the state statute of limitations to the Section 10(b) claim. The Report continues that New York state law [7] requires the Court to look to federal law to determine when the cause of action accrued. *See id.* at 15. According to Magistrate Judge Francis, under federal law, as plaintiffs were on inquiry notice of defendants' alleged fraud upon receiving the Memoranda, the statute of limitations accrued at that time and plaintiffs' claims thus are time-barred. *See id.* at 15–17. Specifically, the Magistrate Judge determined:

The same information that triggered the I.R.S. investigation and on which the Tax Court based its decision was available to the plaintiffs in the placement memoranda at the time of their purchase of partnership shares. In particular, the Tax Court ruled that the partnerships were not legitimately engaged in business for a profit, as evidenced by the lack of arm's length negotiations, the overvaluation of the licensed

---

able for all practical purposes, the Court shall refer to the complaint in the *Rohland* action for convenience.

7. Although plaintiffs are citizens of a total of eight different states, the Magistrate Judge considered New York state law because fraud claims in New York provide the longest statute of limitations period.

technology, and the emphasis on tax benefits, rather than economic profit, in soliciting investors. All of these problems were disclosed in the memoranda.

*Id.* at 16 (internal citation omitted). The Magistrate Judge determined further that, as the accrual rules for the state claims are based on the same "inquiry notice" standard, these claims also should be dismissed as untimely. *See id.* at 24.

As for the Section 17(a) claim, the Magistrate Judge held that the Second Circuit's decision in *Finkel v. Stratton Corp.*, 962 F.2d 169 (2d Cir.1992), resolves the issue in favor of defendants. *See* Report at 9–10. According to the Report, there is no private cause of action under Section 17(a) as a result of this decision. *See id.*

With respect to the RICO claim, the Magistrate Judge found plaintiffs' claims to be timely as, under 18 U.S.C. § 1964(c), the injury did not occur until the Tax Court's decision in *Smith*, denying the deductions claimed by the limited partners. *See id.* at 20. Magistrate Judge Francis also concluded that plaintiffs had complied with Rule 9(b)'s requirement that they plead fraud with particularity as they included specific allegations in paragraphs 17, 18 and 21 of the amended complaint. *See id.* at 21. As for defendants' contention that the RICO claim fails to state a cause of action, the Magistrate Judge rejected these arguments, finding instead that plaintiffs adequately pled at least two predicate acts, a RICO "enterprise" and a "pattern of racketeering activity." *See id.* at 21–24.

Plaintiffs and defendants have filed extensive objections to the Report. Specifically, plaintiffs object to the Magistrate Judge's recommendation that the Court dismiss the Section 10(b) and state law claims. Defendants oppose plaintiffs' objections and object to the Report's failure to recommend the dismissal of plaintiffs' RICO claim. The Court will address the parties' objections below.[8]

8. In accordance with Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1)(C), the

## DISCUSSION

### I. Section 17(a) Claim

The parties do not object to the Magistrate Judge's recommendation that Count Two, setting forth a claim based on Section 17(a), be dismissed on the ground that this provision does not create a private cause of action. *See Finkel v. Stratton Corp.*, 962 F.2d at 175. The Court has reviewed the Report with respect to this motion and, for the reasons set forth in the Report, agrees with its recommendation. Accordingly, defendants' motion to dismiss Count Two is granted.

### II. Section 10(b) Claim

The parties do not dispute that Magistrate Judge Francis engaged in the proper analysis in determining that federal law provides the relevant statute of limitations. Plaintiffs argue, however, that the Magistrate Judge erred in determining when plaintiffs had received inquiry notice of defendants' alleged fraud. According to plaintiffs, the Magistrate Judge should have concluded that inquiry notice did not occur until the *Smith* decision in 1988. The Court disagrees.

Under federal law, for cases involving securities fraud, the statute of limitations begins to run "when the plaintiff has actual knowledge of the alleged fraud or knowledge of the facts which in the exercise of reasonable diligence should have led to actual knowledge." *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir.1977) (citing *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir.1975); *Klein v. Shields & Co.*, 470 F.2d 1344, 1346–47 (2d Cir.1972); *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 8–9 (5th Cir. 1967)), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). In *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983), the Second Circuit Court of Appeals refined its definition of inquiry notice:

'Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits

Court shall review *de novo* those portions of the Report to which the parties object.

that inquiry when it would have developed the truth, and shut his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.'

*Id.* (quoting *Higgins v. Crouse,* 147 N.Y. 411, 416, 42 N.E. 6 (1895)). The question of inquiry notice may be decided on the pleadings where "the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers such as the prospectuses and disclosure forms that are integral to the complaint." *Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 352 n. 3 (2d Cir.1993) ("*Dodds*").

▄▄ In the present case, the Court agrees with the Magistrate Judge's determination that plaintiffs were on inquiry notice of defendants' alleged fraud upon receipt of the Memoranda and the accompanying Tax Opinion Letters. The gravamen of the complaint is that defendants defrauded them by misrepresenting the danger that the partnerships would receive unfavorable tax treatment, leaving plaintiffs with largely worthless investments. As the Memoranda and Tax Opinion Letters informed plaintiffs of the risks associated with their investments, sufficient facts underpinning plaintiffs' claim were therefore available to plaintiffs at the time they invested in the partnerships. Specifically, the Memoranda and Tax Opinion Letters disclosed the "high degree of risk," *see* POGA Memorandum at 1, associated with an investment in the partnerships, including the potential for "a total loss of their investment," *id.* at 3, and the presence of numerous factors that created a risky investment environment. *See id.* at 20–32. Notably, the risks disclosed to potential investors consisted of the very conduct now complained of by

plaintiffs including, *inter alia,* stern warnings regarding tax uncertainties.[9]

The Second Circuit's decision in *Dodds,* is particularly instructive to the case at hand. There, the Second Circuit affirmed this Court's decision dismissing plaintiff's complaint on the ground that the statute of limitations began to run upon plaintiff's receipt of the relevant prospectuses. *Id.* at 350. The Court found that the limited partnerships' prospectuses clearly disclosed the investments' commissions, risks and illiquidity, the factors forming the basis of plaintiff's complaint. *Id.* Accordingly, the Court concluded that, as "[t]hese warnings … were sufficient to put a reasonable investor of ordinary intelligence on notice of the commissions, the risk, and the illiquidity of the investments," the statute of limitations accrued at that time and plaintiff's claim was time-barred. *Id.* at 351–52. As in *Dodds,* here too the Court finds that plaintiffs received inquiry notice upon obtaining the Memoranda and Tax Opinion Letters, several years before the Tax Court confirmed the Memoranda's predictions in *Smith.*[10]

▄▄ With respect to plaintiffs' contention that their claim cannot accrue until an injury actually occurred, *i.e.* when the Tax Court decided *Smith,* the Court finds plaintiffs' contention meritless. For purposes of determining the accrual of the relevant statute of limitations, the relevant point in time is "when plaintiff with assumed knowledge of the fraudulent wrong may assert a claim for relief." *Cruden v. Bank of N.Y.,* 957 F.2d 961, 974 (2d Cir.1992) (quoting *Stull v. Bayard,* 561 F.2d at 432). As plaintiffs are charged with knowledge of the facts underlying their claims at the time of investment, the claim accrued when they invested in the partnerships and not, as plaintiffs suggest,

---

9. Plaintiffs also argue that "while the possibility of numerous risks was disclosed in laundry-list legalese, everything in the offering materials was designed to convey the probability that such negative consequences would not occur." Pls.' Objections to the Report, at 4. To the extent that plaintiffs complain about the length of the Memoranda, the Court notes that it is well-settled that a failure to read investment materials is not

excused by the length of the documents. *See Dodds v. Cigna Sec., Inc.,* 12 F.3d at 351.

10. Plaintiffs also cite to several authorities for the proposition that the risk disclosures in the present case are insufficient to create inquiry notice. The Court has compared the inquiry notice in the instant case with the numerous.

when *Smith* was decided.[11]

▮ Plaintiffs' other attempts to evade the effect of the statute of limitations are equally meritless. First, plaintiffs suggest that, under New York's continuing wrong doctrine, their claim should not be deemed to accrue until the *Smith* decision. The Court disagrees and finds that there is no basis for applying the continuing wrong doctrine in a case such as this, where plaintiffs made a single investment at the time of subscription. *See Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1041 (2d Cir.) (rejecting imposition of the continuing wrong doctrine where "defendants entered into one discreet contract with plaintiffs after which plaintiffs were committed to invest a set amount of money"), *cert. denied,* —— U.S. ——, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992).

▮ Second, the Court agrees with the Magistrate Judge's conclusion that the statute of limitations period should not be tolled on the ground of fraudulent concealment by defendants. The record simply does not indicate facts sufficient to support plaintiffs' position that defendants engaged in an effort to conceal their alleged fraud. To the contrary, the language of the Memoranda makes clear that potential investors should not rely on the projections of the general partners, but rather should conduct their own independent inquiry to determine the pertinent facts.[12] *See* POGA Memorandum at 71.

Thus, plaintiffs are deemed to have received inquiry notice of defendants' alleged fraud no later than 1982, when the last plaintiff purchased shares in the partnerships. As the relevant statute of limitations for

fraud actions is six years, *see* Report at 18, and plaintiffs did not file a complaint until 1989, the Section 10(b) claims are time-barred. Accordingly, defendants' motion to dismiss Count One is granted.[13]

## III. RICO Claim

RICO creates a private cause of action for "[a]ny person injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c). A plaintiff alleging a civil RICO claim must demonstrate the following elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir.1983) (quoting 18 U.S.C. § 1962(a)–(c)), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

In the complaints, plaintiffs aver that defendants' conduct, allegedly in violation of federal securities law and the federal wire and fraud statutes, constitute racketeering activity within the meaning of RICO. *See* Amended Complaint at ¶ 54. The complaints continue that the alleged conduct "constitute[s] a pattern of racketeering activity ... are related ... [and] [t]here is continuity or a threat of continuity of the racketeering activity." *Id.* at ¶¶ 62–63. Plaintiffs claim further that funds "were received by the defendants and part of that income was used

---

citations offered by plaintiffs and finds that the inquiry notice was sufficient here.

**11.** Plaintiffs' reliance upon *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966 (2d Cir.1987), is misplaced. There, the Court merely recognized that a plaintiff in a fraud action must prove damages. That case has no application to the determination of when the statute of limitations accrues.

**12.** Plaintiffs also argue that the Magistrate Judge misunderstood the standard to be applied in determining when the disclosure of risks amounts to inquiry notice for statute of limitations purposes. In light of the Magistrate Judge's determination that plaintiffs were "clearly warned" of

the relevant risks, *see* Report at 17, plaintiffs' contention that the Magistrate Judge found only knowledge of a "possibility" of fraud is unpersuasive. In any event, this Court holds that the Memoranda was sufficient to alert plaintiffs to any fraud at the time of purchase.

**13.** Plaintiffs offer no separate grounds for objecting to the Magistrate Judge's recommendation that plaintiffs' state claims be dismissed as time-barred. As the Court has determined that the claims accrued at the time of purchase, and the state inquiry notice rules are substantially the same as the federal rule, the state claims are also untimely. Accordingly, defendants' motion to dismiss Counts Three, Four and Five is granted.

by defendants to establish and operate the enterprise." *Id.* at ¶ 66.

Defendants argue that Magistrate Judge Francis erred in denying their motion to dismiss plaintiffs' RICO claim as plaintiffs' claim fails to meet any of the requirements for pleading a RICO claim. Specifically, defendants [14] contend that the (1) RICO claim is time-barred as any injury occurred when plaintiffs lost their investments; (2) predicate acts are insufficient as a matter of law because the Memoranda did not contain any fraudulent misrepresentations or omissions; (3) plaintiffs cannot establish justifiable reliance because the Memoranda disclosed all material facts; (4) complaints fail to assert facts supporting a strong inference of fraudulent intent; (5) plaintiffs have failed to plead the alleged predicate acts with particularity as required by Federal Rule of Civil Procedure 9(b); and (6) complaints fail to allege two or more predicate acts constituting a pattern of racketeering activity. Defendants' objections do not withstand scrutiny.

### A. Statute of Limitations

The parties do not dispute that civil RICO claims are governed by a four-year statute of limitations period. The parties disagree, however, as to when the RICO claim accrued in the case at hand. Defendants argue that accrual occurs at the time of injury, namely the moment plaintiffs purchased their shares in the partnerships. This contention is meritless.

To sustain a civil RICO claim, a plaintiff must prove a RICO violation and a resulting injury. *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir.1988) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)), *cert. denied sub nom. Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). A RICO cause of action thus cannot be said to accrue until an injury occurs, *id.,* and a RICO injury does not exist so long as the loss is " 'speculative or [the] amount and nature unprovable.' " *Cruden v. Bank of*

*New York,* 957 F.2d at 977 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971)). Here, plaintiffs could not maintain a RICO claim until the Tax Court's decision in *Smith* since, prior to that decision, any claimed injury would have amounted to mere unsustainable conjecture. As the injury for RICO purposes did not occur until 1988 when the *Smith* case was decided, plaintiffs filed their complaints well within the permitted statute of limitations. Accordingly, defendants' objection to the Report on this ground is denied.

### B. Predicate Acts

Defendants next argue that the RICO claim should be dismissed on the ground that the predicate acts underlying the claim, including allegations of securities, mail and wire fraud, are insufficient as a matter of law. To state a securities fraud claim under Section 10(b), a plaintiff must prove: (1) material misstatements or omissions; (2) indicating an intent to deceive or defraud; (3) in connection with the purchase or sale of a security; (4) upon which plaintiffs reasonably and detrimentally relied. *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986). Similarly, to state a claim for violation of the federal mail or wire fraud statutes, plaintiffs must demonstrate the existence of a scheme to defraud and a knowing use of the mails or wires to implement the scheme. *Sable v. Southmark/Envicon Capital Corp.,* 819 F.Supp. 324, 341 (S.D.N.Y.1993). Defendants attack the sufficiency of the underlying fraud claims on the ground that plaintiffs cannot prove several of these elements. The Court shall address each of defendants' contentions below

### 1. Material Misstatements or Omissions

Defendants argue that plaintiffs fraud claim is untenable because it is based on Memoranda that "bespeak caution" as to precisely the negative investment results of which plaintiffs now complain. In *Luce v.*

---

**14.** Zukerman and the Moving Defendants have submitted separate objections to the Report. As these objections overlap in most respects, howev- er, the Court shall address defendants' objections together.

*Edelstein*, 802 F.2d at 56, the Second Circuit explained that it "was not inclined to impose liability" on the basis of statements and materials regarding projections of future tax benefits and other financial results where the statements "clearly 'bespeak caution.'" *Id.* Thus, warnings in offering materials may limit the ability of an investor to rely on such materials as a forecaster of future financial outcomes. *Friedman v. Arizona World Nurseries, Ltd. Partnership*, 730 F.Supp. 521, 541 (S.D.N.Y.1990), *aff'd*, 927 F.2d 594 (2d Cir.1991). Nonetheless, "employing statements which 'bespeak caution' does not automatically absolve the defendants of liability for any securities violation." *In re Integrated Resources Real Estate Limited Partnerships Sec. Litig.*, 815 F.Supp. 620, 674 (S.D.N.Y.1993). "Fraud is still fraud, and all the cautionary language in the world will not replace a true material omission or misstatement of a fact which would matter to a reasonable investor." *Id.*

■ Plaintiffs here do not merely challenge the specific forecasts and predictions set forth in the Memoranda, such as the likelihood of profit, the likelihood of obtaining tax benefits and the reliability of certain appraisals and feasibility studies. Rather, plaintiffs also allege that the Memoranda and Tax Opinion Letters were specifically designed to dupe investors into believing that the partnerships created a potential for economic profit and tax benefits. According to the complaints, defendants knew at the time that the offer was made that no such possibility existed. While the issue of whether plaintiffs were justified in ignoring the cautionary language contained in the Memoranda and Tax Opinion Letters is a question of fact requiring jury resolution, the Court cannot determine that material misrepresentations did not exist as a matter of law.

### 2. Reasonable Reliance

Defendants next argue that plaintiffs could not have reasonably relied on the Memoranda because they were replete with warnings and cautionary language, including admonitions to seek independent advice regarding the suitability of the investments. This argument fails for the same reason as discussed above. Specifically, an issue of fact exists as to whether plaintiffs reasonably relied on the defendants' representations in the Memoranda and Tax Opinion Letters as to the potential for economic profit and tax benefits from the investments. Thus, despite the Memoranda's cautionary language, defendants' statements as to the possibility of benefits may have induced plaintiffs to invest in the partnerships. Accordingly, the Court cannot say that plaintiffs unreasonably relied on the Memoranda as a matter of law.

### 3. Scienter

■ Defendants also attack the sufficiency of the predicate acts on the ground that plaintiffs have failed to assert facts giving rise to a "strong inference" that Zukerman or the Moving Defendants intended to deceive or defraud plaintiffs. In order to state a claim for violation of the RICO statute, a plaintiff must establish that defendants acted with fraudulent knowledge. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1382–83, 47 L.Ed.2d 668 (1976). More specifically, a plaintiff is required to prove facts supporting a "strong inference" of knowledge on the part of defendants. *Cosmas v. Hassett*, 886 F.2d 8, 12–13 (2d Cir. 1989); *see also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990) ("[A] complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.").

■ After a careful review of the complaints, the Court finds that the facts alleged, if true, adequately demonstrate a strong inference of knowledge by defendants. Most significantly, the complaints allege that defendants knew at the time that the Memoranda were sent that the Memoranda contained material misstatements and omissions designed to defraud plaintiffs. Accordingly, the Court agrees with the Magistrate Judge's determination that plaintiffs have satisfied the scienter requirement for establishing a RICO claim.

### 4. Particularity

■ In addition to the foregoing, defendants object to the Magistrate Judge's ruling on the ground that the RICO claim is

not pled with particularity. RICO claims must be pled with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir.1990); *Browning Ave. Realty Corp. v. Rosenshein,* 774 F.Supp. 129, 137 (S.D.N.Y.1991); *Kuczynski v. Ragen Corp.,* 732 F.Supp. 378, 383 (S.D.N.Y.1989). To satisfy Rule 9(b), a plaintiff must specify: (1) the allegedly fraudulent oral or written misrepresentations; (2) the time and place of each such misrepresentation and the person responsible for making it; (3) the context of such statements and the manner in which plaintiff was misled; and (4) what defendants obtained as a result of the fraud. *See Luce v. Edelstein,* 802 F.2d at 54; *United States v. International Bhd. of Teamsters,* 708 F.Supp. 1388, 1396 (S.D.N.Y.1989). As a general rule, a plaintiff claiming fraud must also establish a connection between the fraudulent statements and each defendant so that each defendant receives notice of the nature of his participation in the alleged fraud. *Parnes v. Mast Property Investors, Inc.,* 776 F.Supp. 792, 796 (S.D.N.Y.1991) (citing *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.")). An exception to this general rule occurs, however, where the plaintiff alleges that an offering memorandum or prospectus was fraudulent and the defendants are all insiders or affiliates who participated in the securities offer. *Luce v. Edelstein,* 802 F.2d at 55; *Parnes v. Mast Property Investors, Inc.,* 776 F.Supp. at 796.

The Court has reviewed the complaints and agrees with the Magistrate Judge's determination that plaintiffs have complied with Rule 9(b)'s particularity requirements. The complaints contain adequate specifics regarding the allegedly fraudulent acts and those persons responsible for any material misstatements and omissions. *See* Amended Complaint at ¶¶ 16–21. The Court further agrees with the Magistrate Judge's conclusion that those not individually identified fall within the "insiders or affiliates" exception described in *Luce v. Edelstein.* Accordingly, defendants' motion to dismiss pursuant to Rule 9(b) is denied.

### C. Pattern of Racketeering Activity

■ Defendants also object to the Magistrate Judge's ruling on the ground that the complaints fail to allege a "pattern of racketeering activity." Plaintiffs seeking redress for alleged civil RICO violations must establish that defendants' conduct constitutes a "pattern of racketeering activity." 18 U.S.C. § 1962(a). A "pattern of racketeering activity" will not be found "without some showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity." *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 242, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989).

■ The Court finds no basis for defendants' claim that plaintiffs have failed to plead a "pattern of racketeering activity." Rather, the complaints clearly allege that defendants' scheme to induce plaintiffs to invest in the partnerships extended over an eight-year time period. If plaintiffs' allegations are proved true, defendants' fraudulent conduct began in 1981 and 1982 with the initial offering of the partnerships and continued through the administration of the partnerships and the concealment of fraud through the late 1980s. Thus, the Court finds that the complaints plead the requisite "pattern of racketeering activity" necessary to sustain a RICO claim. Accordingly, defendants' motion to dismiss Count Two is denied.[15]

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaints, pur-

---

**15.** The Court has reviewed defendants' remaining objections to the Report, set forth in the parties' voluminous submissions, and finds them to be without merit.

suant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, is granted in part and denied in part. Specifically, defendants' motion to dismiss Counts One, Three, Four and Five is granted. Defendants' motion to dismiss Count Two is denied. The parties are directed to appear at a pre-trial conference on April 19, 1995 at 2:00 p.m.

SO ORDERED.